UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  20-cv-20966

FLORIDA BEAUTY FLORA INC.,
a Florida corporation,

       Plaintiff,

vs.

PRO INTERMODAL L.L.C.,
A Florida limited-liability company;

PRO COLD STORAGE, INC.
A Florida for-profit corporation;

VICTOR VELIZ, an individual,

and

GUSTAVO PEREZ, an individual,

       Defendants.

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Florida Beauty Flora, Inc. ("Florida Beauty"), by and through undersigned counsel hereby sues Defendants, Pro Intermodal, L.L.C. ("Intermodal"), Pro Cold Storage Inc. ("Pro Cold"), Victor Veliz ("Veliz") and Gustavo Perez ("Perez") (collectively, "Defendants") and alleges:

## PARTIES, JURISDICTION AND VENUE

1. This is an action seeking injunctive relief and legal redress for violations of or actions which constitute violations of the following: (a) The Defend Trade Secrets Act, (b) The Computer Fraud and Abuse Act, (c) the Economic Espionage Act, (d) the Florida Uniform Trade Secrets Act, (e) common law prohibiting tortious interference with a business relationship, (f) civil conspiracy, (g) breach of fiduciary duty and (h) abetting of the same, and (i) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under 18 USC § 1836, 18 U.S.C. § 1030, 18 U.S.C. § 1832, and 18 U.S.C. § 1962. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are related to the federal claims and form part of the same case and controversy, transaction or occurence.

3. Plaintiff Florida Beauty is a Florida corporation with its principal place of business in Miami, Florida.

4. Defendant Intermodal is a Florida limited-liability company with its principal place of business in Hialeah, Florida.

5. Defendant Pro Cold is a Florida for-profit corporation with its principal place of business in Miami, Florida.

6. Upon information and belief, Defendant Perez is an individual residing in Miami-Dade County, Florida, and is otherwise *sui juris.*

7. Upon information and belief, Defendant Veliz is an individual residing in Miami-Dade County, Florida, and is otherwise *sui juris.*

8.  Defendant Intermodal is subject to the personal jurisdiction of this Court pursuant to §48.193(1)(a), Fla. Stat., because Defendant Intermodal has an office in this state, and has conducted, engaged in and carried out a business venture within the State of Florida.

9.  Defendant Pro Cold is subject to the personal jurisdiction of this Court pursuant to §48.193(1)(a), Fla. Stat., because Defendant Intermodal has an office in this state, and has conducted, engaged in and carried out a business venture within the State of Florida.

10. Defendant Perez is subject to the personal jurisdiction of this Court as a resident of the State of Florida, and by virtue of his presence in the State.  Defendant Perez is additionally subject to the personal jurisdiction of this Court under § 48.193(1)(a)(2), Fla. Stat., as he has committed tortious acts within the state.

11. Defendant Veliz is subject to the personal jurisdiction of this Court as a resident of the State of Florida, and by virtue of his presence in the State.  Defendant Perez is additionally subject to the personal jurisdiction of this Court under § 48.193(1)(a)(2), Fla. Stat., as he has committed tortious acts within the state.

12. Venue is proper in this District as a substantial part of the events or omissions giving rise to the claim occurred within the District's boundaries.

13. Venue is proper under 28 U.S.C. § 1391 in this District because upon information and belief Defendants Perez and Veliz reside in this District, and Defendants Intermodal and Pro Cold are Florida resident entities.

## GENERAL ALLEGATIONS

14.  Plaintiff Florida Beauty was founded in 1983 and is a leading refrigerated carrier providing transportation services, as well as warehousing, consolidation and logistics services to numerous clients in the floral and perishable industry.

15. Plaintiff services numerous clients throughout the United States, and regularly engages in interstate commerce.

16. Upon information and belief, Defendant Intermodal engages in interstate commerce.

17. Defendant Intermodal is a competitor of Plaintiff Florida Beauty, and engages in substantially the same business as Plaintiff.  In the past, Defendant Intermodal has aggressively sought to poach Plaintiff's employees, and to gain access to Plaintiff's base of customers and confidential company information and trade secrets by hiring key employees of Plaintiff.

18. Defendant Pro Cold is a competitor of Plaintiff Florida Beauty, and engages in substantially the same business as Plaintiff.  In the past, Defendant Pro Cold has aggressively sought to poach Plaintiff's employees, and to gain access to Plaintiff's base of customers and confidential company information and trade secrets by hiring key employees of Plaintiff.

19. Defendant Veliz is the President of Defendant Pro Cold.

20. Defendant Veliz is the member-manager of Defendant Intermodal.

21. In response, Plaintiff has required employees to agree to non-compete agreement restricting employment with competitors, and restricting future solicitation for clients of Plaintiff introduced by Plaintiff to employee.  Plaintiff's employees were required to accept as these terms as a condition of continued employment.

22. Recently, Plaintiff has had to threaten suit against a former employee subject to a non-compete agreement after that employee was offered employment by Defendant Intermodal.

23. Eleven years ago, Plaintiff Florida Beauty hired Defendant Perez as a sales manager and to operate the Floral Program and Customer Service department, a position occupied by

Defendant Perez until his notice of intended resignation due to purported health issues on February 11, 2020.

24. During his eleven years of employment, Defendant Perez became a valued member of Plaintiff's management staff, attending management meetings, helping to develop the direction of the company, and developing a close relationship of trust and confidence with Plaintiff's principal shareholder and CFO, Ronen Koubi, and President Ralph Milman.

25. As a result of his position, Defendant Perez was privy to confidential company information, and company trade secrets needed to perform his job function as Sales Manager for the sales team.

26. Defendant was aware that any information disclosed was limited to the purposes delineated in the Employee Manual which detailed company policies on data security, computer usage and securing company confidential information. Perez regularly received copies of the Employee Manual as it was updated from time to time and never stated he did not understand the terms and conditions therein.

27. Upon Plaintiff learning of Defendant Perez's intended departure, Defendant Perez was directly questioned by Plaintiff whether he was leaving his employment of eleven years to accept a position with Defendant Intermodal.  Defendant Perez indicated he was leaving solely due to health issues, and was not accepting or seeking employment with Intermodal under any circumstances.

28. Over the next two days, Defendant Perez gave varying health reasons to employees of Plaintiff as grounds for departing, at one point citing heart trouble, and to a different employee, a brain tumor. On information and belief both of these statements are false.

29. On February 13th and 14th, 2020, Defendant Perez accessed his company e-mail account on a company device, and began to e-mail to his personal e-mail account detailed company information that was privileged, confidential, and kept in the strictest confidence by the Plaintiff.  The information forwarded was subject to rigorous security measures intended to prevent theft, and access was limited to employees on a need to know basis.  Included among the information forwarded were numerous trade secrets kept by the Plaintiff, and crucial to the continued successful operations of the Plaintiff's business operations.

30. While Defendant Perez was authorized to access the account for legitimate business purposes, the purpose for which he accessed the account exceeded the scope of that authority.  Pursuant to written company policy, Defendant Perez was only permitted to access company information on his company e-mail for legitimate business purposes, and with prior authorization.

31. Defendant Perez did not forward proprietary company information and trade secrets for a legitimate business purpose.

32. Defendant Perez did not have prior authorization to disseminate company trade secrets to his personal e-mail account, nor would it have been given under any circumstances.

33. On February 14, 2020, Defendant Perez sent an email to employees indicating that he was leaving his position, effective immediately.  Shortly thereafter, he left the building.

34. During the afternoon of February 14, 2020, an inspection of Defendant Perez's vacated office revealed that physical copies of numerous company documents containing trade secrets were removed without authorization by Defendant Perez, including the entire client list, vendor list, pricing lists, most recent accounts receivable aging report, copies of customer contracts, Electronic Data Interchange program opreations, and copies of

insurance documents considered highly privileged and confidential by Plaintiff. Perez knew these documents were privileged and confidential.

35. On or about February 17, 2020, Plaintiff learned from an employee that Defendant Perez had been introduced that morning at Defendant Intermodal's place of business as the new sales manager.

36. On or about February 25, 2020, Defendant Perez, at the request of his new employer, Defendant Intermodal and armed with intimate knowledge of Plaintiff's proprietary pricing formulas and other trade secrets, traveled to North Carolina to solicit the business of two of Plaintiff's largest accounts, Buds and Blooms, and Derita Floral Supply.

37. Plaintiff has continued to receive reports from clients that Defendants Perez, Intermodal, and Pro Cold are contacting Plaintiff's clients in an attempt to undercut Plaintiff's pricing and business relationships using the trade secrets stolen from Plaintiff by Defendant Perez.

38. Upon information and belief, Defendant Perez was acting at the direction, request or instruction of Defendants Intermodal, Pro Cold and Veliz when he forwarded e-mails from his business account at Plaintiff's company to his personal e-mail account.

39. Upon information and belief, Defendants Veliz, Pro Cold, Intermodal and Perez formed an agreement to take Trade Secrets belonging to Plaintiff for their own use in the operations of Defendants Pro Cold and Intermodal.

I.     **PLAINTIFF'S TRADE SECRETS, CONFIDENTIAL INFORMATION AND PRIVILEGED DATA, AND SECURITY EFFORTS**

40. Plaintiff has a proprietary property interest in its trade secrets developed over nearly four decades in business, to wit, its customer list, pricing information and formulas, surcharge rate calculation, sales forecasting data, customer restrictions and requirements information,

customer ordering databases and history, future business expansion plans. Collectively, these items are referred to as the "Trade Secrets" within this Complaint.

41. Plaintiff's Trade Secrets qualify for protection as Plaintiff derives economic value from the knowledge, which is not generally known in the industry, and Plaintiff has taken numerous steps to keep the information secret.

42. In addition to Trade Secrets, Plaintiff has confidential and privileged business information to which access is tightly controlled.

43. Confidential and privileged business information including accounts receivable aging reports, specific customer contracts, employee compensation policies, employee retention policies, employee holiday and performance-based incentive bonus structures, among other critical information is kept on a need to know basis by the company, and only disseminated to employees who require the information for their job functions.

44. For instance, with regard to the company's client list and other trade secrets stored digitally, only the company Chief Financial Officer, Ronen Koubi, has printing privileges from the company's digital storage.

45. Additionally, pursuant to the Employee Manual, all mobile devices owned by the company and issued to employees are subject to inspection of the device and administrator password control of the Plaintiff. The relevant portion of the manual is excerpted below:

> "The company owns and remains entitled to all cell phone/mobile devices, including all passwords controlling access to them. You may not change those passwords except with permission. At the time of employment termination, all such equipment and passwords must be returned to the company in operable condition."

46. Moreover, even when using a personal device for work purposes, there are significant restrictions on how the Plaintiff allows the user to interact with the company network. It is the written policy of the Plaintiff to require employees to "comply with company policies

regarding the protection of the company's confidential and proprietary information when using personal devices."

47. Additional restrictions can be found in the Employee Manual, including provisions which restrict connecting personal devices to the company network. Provisions like the one included below, among others, evince a strong effort by the company to preserve the security and integrity of the Plaintiff's trade secrets and information.

> Employees may not connect their personal devices to the Company network or to Company equipment (computers, printers, etc.) unless they have a business related need. Employees may have the opportunity to use their personal devices for work purposes. Before using a personal device for work-related purposes, an employee must obtain written authorization from [IT, Management, HR]. The use of personal devices is limited to certain employees and may be limited based on compatibility of technology. To ensure the security of Company information. This should also include details on how Company information will be removed from a device upon termination of employment].
> [SIC]

48. Plaintiff's Information Security Policy is also fully detailed in the Employee Manual, and can be found at paragraph numbered 16 of the manual, on pages 25 & 26. The policy requires employees to keep Plaintiff's trade secrets and confidential information safe from accidental disclosure, or dissemination. A true and correct copy of the Employee Manual is attached hereto as **EXHIBIT A**.

49. Plaintiff has taken numerous steps to secure the integrity of the company's trade secrets, as well as protect the information considered confidential and privileged by the company.

50. Plaintiff employs a full-time information technology professional to protect the company's electronic data, and records. Plaintiff's IT professional is tasked with securing the company's data by both software methods, and by developing the company's information security policies in coordination with the human resources department.

51. One example of Plaintiff's diligence in protecting corporate trade secrets, and corporate confidential and privileged information is to limit access on corporate devices. Plaintiff's employees are restricted from accessing their personal e-mail accounts on company equipment, including but not limited to mobile phones and computers. Defendant Perez was subject to such restrictions.

52. Plaintiff employs numerous information technology security software systems designed to prevent unauthorized access to secure data, including a firewall, anti-virus software, and monitoring of employee device usage, pursuant to the policies delineated in the Plaintiff's Employee Manual.

53. The security of the Plaintiffs' trade secrets being of the utmost importance, Plaintiff has exercised an abundance of caution by restricting access, and taking proactive and prudent steps to restrict dissemination of the data from company or personal devices used by employees.

54. Plaintiff uses its trade secrets in providing products and services used across state lines, and thus uses their trade secrets in interstate commerce.

55. Defendant Perez has acquired and misappropriated Plaintiff's trade secrets to his own uses, and the use of his current employer, Defendant Intermodal, by accessing Plaintiff's computer data systems beyond the scope of his authority to his own benefit and gain.

56. Defendants Perez, Veliz, Intermodal and Pro Cold have utilized Plaintiff's trade secrets in their attempts to sway Plaintiff's clients to use Defendants Intermodal and Pro Cold's services by undercutting Plaintiff's prices using the previously confidential price-formula and fuel surcharge calculations, as well as other trade secrets.

57. As a result of Defendant Perez's previous employment in a management position, and close relationship of trust and confidence that had been formed with Plaintiff's CFO, Ronen, Koubi, Defendant Perez was made privy to company trade secrets, confidential information and privileged information necessary to execute his duties as sales manager.

58. Upon information and belief, at some point prior to Defendant Perez's departure from Plaintiff's employ, Defendant's Perez, Veliz, Pro Cold and Intermodal reached an agreement where Defendant Perez would join Defendant Intermodal's company, and provide additional support to Defendant Pro Cold's efforts to increase sales.

59. Defendants Intermodal, Pro Cold, Veliz and Defendant Perez agreed that they would utilize Defendant Perez's access to his employer's trade secrets, data systems and information to gain access to Plaintiff's trade secrets.

60. Defendants Intermodal, Veliz, Pro Cold and Defendant Perez formed a conspiracy by virtue of making an agreement to obtain Plaintiff's trade secrets by unauthorized use of Plaintiff's computer systems, and the physical removal of Plaintiff's secured documents, and use them in their business operations.

61. Defendant Perez took an act in furtherance of that conspiracy by virtue of e-mailing himself Plaintiff's trade secrets.

62. Defendant Intermodal took an act in furtherance of the conspiracy by virtue of employing Defendant Perez immediately following his departure from Plaintiff's employ.

63. Defendants Pro Cold and Intermodal took an additional act in furtherance of the conspiracy by virtue of utilizing Defendant Perez's travel to North Carolina to solicit Plaintiff's clients.

## COUNT I
### INJUNCTIVE RELIEF
### (against DEFENDANT PEREZ)

64. Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

65. Plaintiff has been harmed by Defendant Perez's pilfering and dissemination of company trade secrets, privileged information and confidential company information.

66. Plaintiff lacks an adequate remedy at law, other than the issuance of a preliminary injunction.

67. Plaintiff cannot be adequately compensated by money damages, as the damage to Plaintiff's business reputation and business relationships are not easily quantifiable.

68. Money damages would be inadequate because dissemination and misappropriation of the Plaintiff's trade secrets by its competitor would threaten the viability and continued existence of Florida Beauty as an ongoing concern.

69. Plaintiff will be irreparably harmed in the absence of an injunction against Defendant Perez.

70. The Plaintiff has a high likelihood of success on the merits at trial because there is evidence of transmission of company trade secrets and confidential information from the Defendant's work e-mail to his personal e-mail account.

71. The Plaintiff has a high likelihood of success on the merits at trial because there is evidence that Defendant Perez has accepted employment with Plaintiff's direct competitor after removing Plaintiff's physical documents containing trade secrets, and transmitting e-mails containing trade secrets from Defendant's work e-mail to his personal account. Perez's lack of good faith and clear intent to harm Plaintiff can be seen by the (i) secretive removal

of documents and information along with (ii) the cornucopia of excuses made for his movement from Plaintiff to Intermodal.

72. The balance of equities weighs in favor of the Plaintiff as the benefit granted to Plaintiff by the issuance of an injunction would be nothing short of saving the business from financial distress and potential closure, and averting potential human capital loss due to layoffs.

73. The detriment to Defendant Perez by preventing him from utilizing the Plaintiff's trade secrets to solicit Plaintiff's clients while in the employ of Defendant Intermodal is outweighed by the potential harm to the Plaintiff, and consequently, Plaintiff's numerous employees.

74. The detriment to Defendant Perez by preventing him from remaining in the employ of Defendant Intermodal is outweighed by the threatened injury to the Plaintiff, and again, Plaintiff's employees. Put another way, Perez's intentional breaches of duty may cause the loss of employ for hundreds of employees and that harm outweighs any harm he intentionally assumed by working for Intermodal as he chose to do so. Perez did not merely accept a job with a competitor, he did so secretly and then stole documents from Plaintiff in the course of resignation. Perez's own actions necessitate the at issue enjoinment.

WHEREFORE, Florida Beauty respectfully requests entry of a preliminary injunction preventing the employ of Defendant Perez by Defendant Intermodal, Defendant Pro Cold, or the personal employ of Victor Veliz or any of his controlled or owned entities during the pendency of this suit, or alternatively an order requiring deletion of any data removed by Defendant Perez and enjoining the use of such data while in the employ of Defendants, along with such other and further relief as the Court may deem just, proper and equitable under the circumstances. In enforcing the at issue

Order the Plaintiff prays that the Court order a neutral third party forensic expert in information technology ("IT") to review and ensure full deletion of information. Plaintiff further request that Perez be enjoined from contacting any clients of Plaintiff to solicit business or inquire regarding logistics or transportation related needs. Plaintiff further requests that all bonuses and payments made to Perez by Intermodal, Veliz, or Pro Cold in consideration of the at issue tortious conduct be disgorged by the Court and paid to Plaintiff.

**COUNT II**
**INJUNCTIVE RELIEF**
**(against DEFENDANTS INTERMODAL, VELIZ AND PRO COLD)**

75. Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

76. Plaintiff has been harmed by Defendant Intermodal, Pro Cold and Veliz's misappropriation of Plaintiff's trade secrets, and confidential and privileged business information.

77. Plaintiff lacks an adequate remedy at law, other than the issuance of a preliminary injunction.

78. Plaintiff cannot be adequately compensated by money damages, as the damage to Plaintiff's business reputation and business relationships is not easily quantifiable.

79. Money damages would be inadequate because dissemination and misappropriation of the Plaintiff's trade secrets by its competitor would threaten the viability and continued existence of Florida Beauty as an ongoing concern.

80. Plaintiff will be irreparably harmed in the absence of an injunction against Defendant Intermodal.

81. The Plaintiff has a high likelihood of success on the merits at trial because there is evidence of transmission of company trade secrets and confidential information from the Plaintiff's

former employee, Defendant Perez's work e-mail to his personal e-mail account, either after or shortly before joining Defendant Intermodal's employ.

82. The Plaintiff has a high likelihood of success on the merits at trial because there is evidence that Defendant Perez has accepted employment with Plaintiff's direct competitor after removing Plaintiff's physical documents containing trade secrets, and transmitting e-mails containing trade secrets from Defendant's work e-mail to his personal account.

83. The balance of equities weighs in favor of the Plaintiff as the benefit granted to Plaintiff by the issuance of an injunction would be nothing short of saving the business from financial distress and potential closure, and averting potential human capital loss due to layoffs.

84. The detriment to Defendants by preventing them from utilizing the Plaintiff's trade secrets to solicit Plaintiff's clients while employing Defendant Perez is outweighed by the potential harm to the Plaintiff.

85. The detriment to Defendants by preventing them from employing one particular sales manager, to wit, Defendant Perez, is outweighed by the threatened injury to the Plaintiff and Plaintiff's hundreds of employees.

86. The public interest is served by the issuance of a protective injunction because preserving the sanctity and security of industry trade secrets has been a Congressional priority of public interest, as evidenced by passage of the Defend Trade Secrets Act, and the importance of intellectual property protections to the American economy in general.

WHEREFORE, Florida Beauty respectfully requests entry of a preliminary injunction preventing the employ of Defendant Perez by Defendants Intermodal, Pro Cold and Victor Veliz during the pendency of this suit, and an order preventing solicitation of any of Plaintiff

Florida Beauty's clients by Defendants Intermodal, Veliz and Pro Cold and their agents during the pendency of this suit, along with such other and further relief as the Court may deem just, proper and equitable under the circumstances including similar relief to the enjoinment under Count I as applicable and necessary including use of a neutral third party IT consultant to disgorge all information inappropriate appropriated.

### COUNT III
**VIOLATIONS OF 18 U.S.C § 1836**
**DEFEND TRADE SECRETS ACT**
**(against ALL DEFENDANTS)**

87. Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

88. Plaintiff has a proprietary property interest in its trade secrets to wit, its customer list, pricing information and formulas, surcharge rate calculation, sales forecasting data, customer restrictions and requirements information, customer ordering databases and history, future business expansion plans.

89. Defendant Perez for his own benefit and that of Defendants Veliz, Intermodal and Pro Cold acquired the trade secrets at issue by accessing company data systems for a purpose for which he was not authorized.

90. Defendant Perez for his own benefit and that of his Co-Defendants disclosed Plaintiff's trade secrets to his new employers, Defendants Intermodal, Pro Cold, and Veliz.

91. Defendants Intermodal, Pro Cold, Veliz and Defendant Perez conspired to wrongfully and maliciously acquire Plaintiff's trade secrets.

92. Defendants Intermodal, Pro Cold, Veliz and Defendant Perez conspired to wrongfully and maliciously appropriate Plaintiff's trade secrets.

93. Defendants Intermodal, Pro Cold, Veliz, and Defendant Perez conspired to wrongfully and maliciously utilize Plaintiff's trade secrets by soliciting Plaintiff's clients and interfering with Plaintiff's business relationships using the information regarding pricing and surcharge formulas.

94. Defendants' actions were premeditated, intentional and constituted a knowing disregard of Plaintiff's rights.

95. Plaintiff has suffered damages as a result of Defendant Perez's actions.

96. Plaintiff has suffered damages as a result of Defendant Intermodal's actions.

97. Plaintiff has suffered damages as a result of Defendant Pro Cold's actions.

98. Plaintiff has suffered damages as a result of Defendant Veliz's actions.

WHEREFORE, Plaintiff requests compensatory damages, including lost profits, the disgorgement of Defendants' pecuniary gains from their actions, punitive damages for willful and malicious conduct, along with such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT IV
## VIOLATIONS OF 18 U.S.C § 1030
## COMPUTER FRAUD AND ABUSE ACT
## (against ALL DEFENDANTS)

99. Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

100.    Defendant Perez intentionally accessed Plaintiff's computer systems.

101.    Defendant Perez intentionally accessed Plaintiff's e-mail server.

102.    Defendant Perez exceeded the scope of his authority to use Plaintiff's company computer systems and equipment by virtue of transmitting trade secrets and confidential

company information to his personal e-mail account for the use, benefit and gain of his co-defendant, Pro Intermodal.

103.     Defendant Intermodal, through their employee and agent, Defendant Perez, accessed Plaintiff's e-mail server and computer systems.

104.     Defendant Pro Cold, through their agent, Defendant Perez, accessed Plaintiff's e-mail server and computer systems.

105.     Defendant Veliz, through his co-conspirator, accessed Plaintiff's e-mail server and computer systems.

106.     By virtue of accessing Plaintiff's computer information systems through their employee and agent, Defendant Perez, Defendants accessed a computer system without authority.

107.     Defendants obtained Plaintiffs trade secrets, detailed *supra*, along with confidential and privileged business data which does not necessarily qualify as a trade secret by virtue of their unauthorized access to Plaintiff's systems.

108.     Defendants' actions have damaged Plaintiff's in excess of $5,000 because dissemination of the trade secrets have forced adjustments to Plaintiff's pricing formula and surcharge formulas, resulting in lost profits, and harmed Plaintiff's goodwill with clients.

109.     Plaintiff's computer system qualifies as a "protected computer" for the purposes of the statute as it is used in interstate commerce.

110.     Plaintiff has suffered damages as a result of Defendants' actions.

WHEREFORE, Plaintiff requests compensatory damages, including lost profits, the disgorgement of Defendants' pecuniary gains from their actions, along with such other and further relief as the Court may deem just, proper and equitable under the circumstances.

**COUNT V**
**VIOLATIONS OF 18 U.S.C. § 1832**
**ECONOMIC ESPIONAGE ACT**
**(against ALL DEFENDANTS)**

111.    Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

112.    Defendant Perez intentionally accessed Plaintiff's computer systems to obtain company trade secrets used in interstate commerce.

113.    Defendant Perez intentionally accessed Plaintiff's e-mail server to obtain company trade secrets used in interstate commerce.

114.    Defendant Perez took paper copies of trade secrets belonging to the Plaintiff and used in interstate commerce prior to his date of departure.

115.    Defendant Perez exceeded the scope of his authority to use Plaintiff's company computer systems and equipment by virtue of transmitting trade secrets and confidential company information to his personal e-mail account for the use, benefit and gain of his co-defendant, Pro Intermodal.

116.    Defendants Intermodal, Pro Cold and Veliz, through their employee and agent, Defendant Perez's unauthorized access to Plaintiff's computer systems, obtained and received the trade secrets of Plaintiff.

117.    Defendants remain in possession of the trade secrets at issue.

118.    Plaintiff has been damaged by the actions of the Defendants.

WHEREFORE, Plaintiff requests compensatory damages, including lost profits, the disgorgement of Defendants' pecuniary gains from their actions, along with such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VI
### VIOLATIONS OF FLORIDA STAT. 688.02
### FLORIDA UNIFORM TRADE SECRETS ACT
### (against ALL DEFENDANTS)

119.  Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

120.  Plaintiff has a proprietary property interest in its trade secrets developed over nearly four decades in business, to wit, its customer list, pricing information and formulas, surcharge rate calculation, sales forecasting data, customer restrictions and requirements information, customer ordering databases and history, future business expansion plans.

121.  Defendant Perez misappropriated Plaintiff's trade secrets by transmitting them without authority to his personal e-mail account.

122.  Defendant Perez misappropriated Plaintiff's trade secrets by removing confidential pricing lists, client lists, and pricing and surcharge formula documents used by Plaintiff in the execution of its business.

123.  Defendant Perez disclosed Plaintiff's trade secrets to Defendants Intermodal, Pro Cold and Veliz.

124.  Defendants Pro Cold, Intermodal and Veliz had knowledge that Defendant Perez had misappropriated Plaintiff's trade secrets, and acquired those secrets through improper means.

125.    Defendants Intermodal and Pro Cold knew the crucial information taken by Defendant Perez was a trade secret by virtue of their operations in the same industry.

126.    Defendants Intermodal, Pro Cold and Veliz utilized the trade secrets of Plaintiff in the execution of their business.

127.    Plaintiff was damaged by the actions of Defendant Perez.

128.    Plaintiff was damaged by the actions of Defendants Intermodal, Veliz and Pro Cold.

WHEREFORE, it is respectfully requested that this Court enter a final judgment in favor of Plaintiff and against Defendants, jointly and severally, enjoining Defendants from any further use of the Trade Secrets under Fla. Stat. § 688.003, for damages, attorneys' fees and costs under Fla. Stat. § 688.004, and for such other, further and different relief the Court may deem just, proper and equitable under the circumstances.

## COUNT VII
### TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP
#### (against DEFENDANTS INTERMODAL AND PRO COLD)

129.    Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

130.    Defendants Intermodal and Pro Cold knew of Plaintiff's business relationship with Buds and Blooms, located in North Carolina.

131.    Defendants Intermodal and Pro Cold knew of Plaintiff's business relationship with Derita Floral Supply, also located in North Carolina.

132.    To promote their own interests, Defendants Intermodal and Pro Cold, intentionally and without justification, interfered with the business relationship of Plaintiff by coordinating the solicitation of Plaintiff's clients using stolen trade secrets belonging to Plaintiff.

133.   Defendants' conduct has damaged Plaintiff's relationship with two of its largest clients and will continue to damage Plaintiff's relationship with other clients if allowed to continue unabated.

134.   Defendants' conduct has caused Plaintiff significant damages, and will continue to cause damage to Plaintiff.

135.   By reason of the foregoing conduct, Defendants Intermodal and Pro Cold are liable to Plaintiff for damages to be determined at trial.

WHEREFORE, Plaintiff Florida Beauty respectfully requests that this Court enter a final judgment in favor of Plaintiff and against Defendants for actual and compensatory damages, the disgorgement of any ill-gotten gains recognized by the Defendant Intermodal, and for such other, further and different relief the Court may deem just, proper and equitable under the circumstances.

<u>**COUNT VIII**</u>
**CIVIL CONSPIRACY**
**(against ALL DEFENDANTS)**

136.   Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

137.   Defendants Perez and Veliz, on behalf of co-Defendants Intermodal and Pro Cold forged an agreement whereby Perez would secure trade secrets belonging to Plaintiff by accessing Plaintiff's computer systems prior to Defendant Perez's official departure from Plaintiff's company.

138.   Under the agreement, Defendant Perez would acquire Plaintiff's trade secrets and take employment at Defendant Intermodal's company as a sales manager.

139.     Defendant Perez took an overt act in furtherance of the conspiracy by virtue of his unauthorized access to Plaintiff's computer systems, and removal of trade secret documents from his office prior to his departure.

140.     Defendant Intermodal took an overt act in furtherance of the conspiracy by virtue of accepting Defendant Perez's misappropriated trade secrets, and employing Defendant Perez in a position to utilize the information to undermine Plaintiff's operations.

141.     Defendant Veliz took an overt act in furtherance of the conspiracy by virtue of accepting delivery of Plaintiff's Trade secrets from co-conspirators Perez and Intermodal.

142.     Defendant Pro Cold took an overt act in furtherance of the conspiracy by virtue of accepting delivery of Plaintiff's Trade Secrets from co-conspirators Intermodal, Perez and Veliz, and utilizing those secrets to their own business purposes.

143.     The Plaintiff was has been damaged by the actions of the Defendants performed pursuant to the conspiracy.

WHEREFORE, Plaintiff Florida Beauty respectfully requests that this Court enter a final judgment in favor of Plaintiff and against Defendants for actual and compensatory damages, the disgorgement of any ill-gotten gains recognized by the Defendants, and for such other, further and different relief the Court may deem just, proper and equitable under the circumstances.

## COUNT IX
## BREACH OF FIDUCIARY DUTY
### (against DEFENDANT PEREZ)

144.   Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

145.    From on or about January, 2008, through February 14, 2020, Defendant Perez was employed by Plaintiff as its Sales Manager, and Head of the Floral and Customer Service Program. In his position, Defendant Perez was responsible for direct management of Plaintiff's sales force, and served as Plaintiff's primary sales agent with Floral customers.  By virtue of his position with Plaintiff, Defendant Perez owed Plaintiff a fiduciary duty of loyalty, and an overall duty to act in Plaintiff's best interest.

146.    Defendant Perez knowingly and willfully breached his fiduciary duty to Plaintiff, and consciously disregarded its best interests, by: (1) while still nominally employed by Plaintiff, Defendant conspired with Defendant Intermodal to acquire and misappropriate the trade secrets of Plaintiff; (2) transmitting Plaintiff's trade secrets to his personal e-mail account for his and his new employer's later use; (3) removing documents containing company trade secrets and confidential company information including sales forecasts, accounts receivable aging reports, compensation schedules, pricing schedules, and surcharge formulas.

147.    As a direct and proximate result of Defendant Perez's breaches of fiduciary duty, Plaintiff has been damaged.

WHEREFORE, Plaintiff Florida Beauty respectfully requests that this Court enter a final judgment in favor of Plaintiff and against Defendant for actual and compensatory damages, the disgorgement of any ill-gotten gains recognized by the Defendant Perez, and for such other, further and different relief the Court may deem just, proper and equitable under the circumstances.

## COUNT X
### AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (against DEFENDANTS INTERMODAL, PRO COLD AND VELIZ)

148. Florida Beauty re-alleges and incorporates paragraphs 1 through 63 as though fully set forth herein.

149. From on or about January, 2008, through February 14, 2020, Defendant Perez was employed by Plaintiff as its Sales Manager.  In his position, Defendant Perez was responsible for direct management of Plaintiff's entire sales force, and served as Plaintiff's primary sales agent with customers.  By virtue of his position with Plaintiff, Defendant Perez owed Plaintiff a fiduciary duty of loyalty, and an overall duty to act in Plaintiff's best interest.

150. Defendant Perez knowingly and willfully breached his fiduciary duty to Plaintiff, and consciously disregarded its best interests, by: (1) while still nominally employed by Plaintiff, Defendant conspired with Defendants to acquire and misappropriate the trade secrets of Plaintiff; (2) transmitting Plaintiff's trade secrets to his personal e-mail account for his and his new employer's later use; (3) removing documents containing company trade secrets and confidential company information including sales forecasts, accounts receivable aging reports, compensation schedules, pricing schedules, and surcharge formulas.

151. Defendants Intermodal, Veliz and Pro Cold knowingly induced and participated in the breaches of fiduciary duties by Defendant Perez.

152. Defendants Pro Cold, Intermodal and Veliz did so in a calculated attempt to harm Plaintiff's business operations.

153. As a direct and proximate result of Defendants' aiding and abetting Defendant Perez's breaches of fiduciary duty, Plaintiff has been damaged.

WHEREFORE, Plaintiff Florida Beauty respectfully requests that this Court enter a final judgment in favor of Plaintiff and against Defendants for actual and compensatory damages, the

disgorgement of any ill-gotten gains recognized by the Defendants, and for such other, further and different relief the Court may deem just, proper and equitable under the circumstances.

### COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962
### RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT
### (against ALL DEFENDANTS)

154.     Florida Beauty re-alleges and incorporates paragraphs 1 through 55 as though fully set forth herein.

155.     Defendants Perez, Intermodal, Pro Cold and Veliz perpetrated a scheme whereby they would misappropriate Florida Beauty's trade secrets in violation of the Defense of Trade Secrets Act, as further set forth in Count III of this Complaint.

156.     Defendants perpetrated a scheme whereby they would misappropriate Florida Beauty's trade secrets in violation of the Computer Fraud and Abuse Act, as further set forth in Count IV of this Complaint.

157.     Defendants Perez and Intermodal perpetrated a scheme whereby they would misappropriate Florida Beauty's trade secrets in violation of the Economic Espionage Act, as further set forth in Count V of this Complaint.

158.     In violation of 18 U.S.C. § 1832 (a)(1), Defendants Perez, Pro Cold, Veliz, and Intermodal, acting in concert pursuant to an agreement, misappropriated Plaintiff's trade secrets, with the intent to convert the same to their own use and economic benefit.  Such trade secrets relate to Florida Beauty's pricing formulas, client lists, vendor lists, surcharge calculation formula, and future business expansion plans.

159.     Defendants Intermodal, Veliz and Pro Cold received and possess the information converted and transmitted by Defendant Perez, consistent with the meaning expressed in 18 U.S.C.

§1832(a)(3). Defendants were aware of the illegitimate nature with which the information was obtained, as they were a party to the conspiracy to obtain the trade secrets.

160.    Defendants Perez, Intermodal, Pro Cold and Veliz conspired to commit the offenses proscribed in 18 U.S.C. §1832(a)(1-3), and took affirmative steps in furtherance of the conspiracy by transmitting and receiving the trade secret documents.

161.    In violation of 18 U.S.C. § 1832 (a)(1), Defendant Perez transmitted via electronic means to his personal e-mail account, without authorization and in contravention of employee restrictions, confidential trade secrets belonging to Plaintiff using company equipment.

162.    Defendant Perez, in violation of 18 U.S.C § 1030 et. seq., the Computer Fraud and Abuse Act, intentionally and without authorization accessed a computer system belonging to Plaintiff with the purposes of stealing confidential company information and trade secrets.

163.    In violation of 18 U.S.C. § 1832 (a)(1), Defendant Perez carried away via physical means, and upon information and belief later duplicated, company documents containing trade secrets, without authorization and in contravention of employee requirements.

164.    Defendants' misappropriation was related to trade secrets utilized in the operations of an interstate commerce company.

165.    The detailed misappropriation and utilization of Plaintiff's trade secrets are ongoing.

166.    Defendant Perez conspired with Defendants Veliz, Pro Cold, and Intermodal for the purpose of unlawfully utilizing Plaintiff's trade secrets, and other proprietary information to steal and otherwise misappropriate Plaintiff's business opportunities, clients and prospective clients.

167.    The association between Defendant Perez and Defendants Intermodal, Pro Cold and Veliz constitutes an enterprise within the meaning of the statute.

168.    On information and belief, Defendants Intermodal, Feliz and Pro Cold engaged in a campaign of hiring current or former Florida Beauty employees in an attempt to gain access to Florida Beauty's confidential and trade secret information.

169.    Defendants, by and through their improper and illegitimate activities and wrongful conduct, willfully and with actual knowledge agreed to and did conduct and participate in the conduct of an enterprise affairs through a pattern of racketeering activity for the purposes of intentionally misappropriating Plaintiff's trade secrets, and other proprietary information.

170.    In furtherance of their scheme, Defendants willfully and with actual knowledge committed multiple acts including, but not limited to the unlawful theft and continuing misappropriation of Plaintiff's trade secrets, the unlawful theft and delivery of Plaintiff's computerized data and information, and the use of electronic means to transmits such information through interstate commerce.

171.    These aforementioned acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. 1961.

172.    As a direct and proximate result of the racketeering activities of Defendants, Plaintiff has been injured in its business and its property, including loss of profit and income, loss of protected and confidential business information, loss and illegal dissemination of trade secret data, all of which has been used to harm the Plaintiff to the benefit of the Defendants' business interests.

WHEREFORE, Plaintiff Florida Beauty respectfully requests that this Court enter a final judgment in favor of Plaintiff and against Defendant for treble damages, attorneys' fees, and for such other, further and different relief the Court may deem just, proper and equitable under the circumstances.

## DEMAND FOR JURY TRIAL & RESERVATION OF RIGHTS

Plaintiff hereby demands a trial by jury on all issues so triable. Plaintiff further reserves all right to seek punitive damages and join additional parties such as Elizabeth Veliz or any entities owned or controlled by Elizabeth Veliz or Victor Veliz should discovery show personal actions outside of Intermodal or Pro Cold for individual gain.

Dated: March 3, 2020

Respectfully Submitted,

The Law Offices of
Christopher J. Malafis, P.A.

/s/Christopher J. Malafis, Esq.
Christopher J. Malafis, Esq.
Fla. Bar No.: 1007686
cjm@malafisfirm.com
service@malafisfirm.com

Ainsworth + Clancy, PLLC

/s/ Ryan Clancy, Esq.
Ryan Clancy, Esq.
Fla. Bar No.: 117650
ryan@business-esq.com
info@business-esq.com
*Attorneys for the Plaintiff*

801 Brickell Ave., 9th FL
Miami, Florida 33131
(305) 600-3816 Phone
(305) 600-3817 Fax

## Verification

I, Ronen Koubi, declare as follows:

1. I am an officer of the Plaintiff Corporation in the present case, and a resident of the State of Florida.

2. I have personal knowledge of the facts set forth in the Amended Complaint and that the allegations therein are true and correct to the best of my knowledge, information, and belief, and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct.

Executed in Miami, Florida, on March 2, 2020.

Ronen Koubi, C.F.O. Florida Flora Beauty