UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:20-CV-20966-CMA

FLORIDA BEAUTY FLORA INC., )
a Florida Corporation,               )
                                            )
            Plaintiff,               )
vs.                                      )
                                            )
PRO INTERMODAL L.L.C.             )
a Florida limited-liability company;  )
                                            )
PRO COLD STORAGE, INC.          )
a Florida for-profit corporation;     )
                                            )
VICTOR VELIZ, an individual,     )
                                            )
and                                       )
                                            )
GUSTAVO PEREZ, an individual,  )
                                            )
            Defendants.               )
_____)

## PLAINTIFF'S *EX PARTE* MOTION FOR EMERGENCY TEMPORARY INJUNCTIVE RELIEF

Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff, Florida Beauty Flora, Inc., respectfully moves this Court for entry of a temporary restraining order enjoining Defendants from using the proprietary, confidential business data and trade secrets belonging to the Plaintiff in the solicitation of Plaintiff's clients and for other relief the Court deems appropriate under the circumstances.  In support, Plaintiff states as follows:

## INTRODUCTION AND FACTUAL BACKGROUND

Mother's Day is rapidly approaching, and with it comes one of the busiest and most lucrative holidays for the entire floral industry, floral suppliers begin to finalize their orders **this**

**coming Monday April 27, 2020**.  According to the National Retail Federation, total expected spending domestically for the holiday is expected to reach 26.7 billion dollars, with 2.56 billion of that figure expected to be spent on the traditional gift of flowers. *Plaintiff's Exhibit VV-1*.  For Plaintiff, the holiday represents a very significant percentage of their yearly revenue **and approximately fifty percent of net profits**, and along with Valentine's Day constitutes the busiest business periods during the calendar year. Given the rapid approach of their busiest holiday and Defendants' renewed attempts to solicit Plaintiff's existing client base using misappropriated trade secrets, Plaintiff has been left with no recourse but to seek emergency relief from this Court.

Defendants engaged in a well-orchestrated scheme to obtain Plaintiff's valuable trade secrets and intellectual property.  Defendant Perez, working on behalf of Defendants Veliz, Pro Cold Storage and Pro Intermodal, accessed Plaintiff's secured computer systems used in interstate commerce for the purpose of obtaining and utilizing Plaintiff's trade secrets, and private, confidential business information.  In addition to exceeding the scope of his authority on Plaintiff's computer systems to misappropriate Plaintiff's Trade secrets, Defendant Perez removed numerous hard copies of documents entrusted to his care which contained Plaintiff's trade secrets.  Defendant Perez, while still nominally employed by Plaintiff, had already accepted employment with Defendant Pro Intermodal and has since distributed the pilfered corporate materials to the co-defendants, Veliz, Pro Cold Storage, and Pro Intermodal. Perez has solicited Plaintiff's clients even flying cross-country (presumably paid by Pro Intermodal, Veliz or Pro Cold Storage) in an attempt to steal clients whose information was private.

Upon discovering the missing materials, Plaintiff, through counsel, filed an eleven count complaint against the Defendants seeking injunctive relief and alleging violations of 18 U.S.C § 1836 – The Defend Trade Secrets Act (Count III), 18 U.S.C § 1030 – The Computer Fraud and

Abuse Act (Count IV), 18 U.S.C § 1832 – The Economic Espionage Act (Count V), Florida Statute 688.02 – The Florida Uniform Trade Secrets Act (Count VI), and 18 U.S.C § 1962 – The Racketeer Influence and Corrupt Organizations Act (Count XI).  In addition to the counts seeking recovery under Federal and state statutes, Plaintiff also brought counts for injunctive relief (Counts I & II), and further alleged a variety of common law claims including breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, tortious interference, civil conspiracy, (Counts VII through X). *Plaintiff's Verified Complaint for Injunctive Relief and Damages and Demand for Jury Trial.* [D.E. 2].

Plaintiff Florida Beauty Flora has been in operation since 1983, providing refrigerated carrier services, warehousing services, consolidation and logistics services to its client in the perishable floral industry.  The nature of Plaintiff's business is such that significant portions of its operations involve interstate commerce, and its computers are used in furtherance of operating its interstate business activities.  During its long history of operation, the company has compiled data crucial to its operations that it considers proprietary trade secrets. Plaintiff has a proprietary property interest in its trade secrets developed over nearly four decades in business, to wit, its customer list, pricing information and formulas, surcharge rate formula and calculations, sales forecasting data, customer restrictions and requirements information, bills of lading, customer ordering databases and history, and future business expansion plans. This information is not generally available to the public, and Plaintiff derives an independent economic value from their use.

Defendants Pro Intermodal and Pro Cold Storage are competitors of Plaintiff's business, but are relatively new operations compared to the extensive track history of success enjoyed by Plaintiff.  Defendant Veliz is the principal and manager of both companies, as they are owned by

Mr. Veliz.  However, with their long history of satisfied clients, extensive contacts throughout the industry and the knowledge garnered by virtue of their more extensive experience within the industry, Plaintiff has enjoyed a competitive advantage over the Defendant companies when it comes to pricing, reputation, good will, and the like.  Faced with an inability to compete in business with the Plaintiff using wholly legitimate means, the Defendants conspired to deprive Plaintiff of its rightful economic advantage and trade secrets through a scheme to infiltrate Plaintiff's place of business and electronic data storage systems.

From the evidence gathered during Plaintiff's investigation thus far, it appears Defendant Perez began gathering information belonging to his employer at the time, Plaintiff Florida Beauty Flora, no later than January 12, 2020, and possibly earlier[1].  Following his official departure from Plaintiff's employ in February of 2020, Plaintiff discovered numerous proprietary documents were not returned to the company and were missing from Defendant Perez's former office, including master customer lists, bills of lading, and the formulas used for calculating shipping rates and surcharge rates.  The missing documents prompted an investigation of Defendant Perez's other activities with regard to company trade secrets.  Plaintiff's Information Technology staff accessed the company e-mail account assigned to Defendant Perez and discovered that Defendant Perez had forwarded over 45 separate emails from his company account on the company's computer to his personal Gmail account, in violation of the Plaintiff's company written policies requiring employees to secure and keep the company's trade secrets confidential.  (Exhibits A-1 through

---

[1] Plaintiff is seeking expedited discovery relating to the purpose and content of Defendant Perez's conversations with Defendant Pro Intermodal's representatives in December of 2019 and January of 2020, weeks prior to Defendant Perez's departure from Plaintiff's employ.

TT-1)[2]  In addition to the forwarding of e-mails containing client identifying information and contact details, Defendant Perez similarly forwarded the attachments originally included on those e-mails.  The number of attachments forwarded by Defendant Perez consists of over 40 different files containing hundreds of pages of the Plaintiff's customer information, surcharge rates, customer ordering history and delivery preferences, bills of lading, load reports, among other company data considered trade secrets by the Plaintiff.[3]

In addition to the electronic evidence of corporate espionage at play in this matter, Plaintiff has learned from a former employee of Defendant Pro Intermodal, Miguel Fernandez, that Defendant Perez was introduced as the new sales manager to staff members at Pro Intermodal prior to Perez's official departure from Plaintiff's employ. Exhibit UU – Affidavit of Miguel Fernandez. This evidence would seem to indicate that Defendant Perez had been working on behalf of his co-defendant Pro Intermodal as an agent, while still employed with Plaintiff's company, and that the conspiracy formed by the Defendants to pilfer Plaintiff's corporate trade secrets began sometime in late 2019, or January 2020. See Exhibit U-1. As can be seen from Exhibit U-1 **Defendant Perez seeks data regarding sales volumes from Plaintiff's sales staff for Valentines Day "Rush" prior to when it would be relevant for his job position, uncoincidentally 24 hours before transmitting Plaintiff's trade secrets.**

---

[2] The Exhibits have been filed in a redacted form, consistent with this Court's earlier order, to prevent revealing the very trade secrets that Plaintiff instituted this action to preserve and protect. Plaintiff prays that should the Court require it notify Plaintiff and allow for *in camera* submission.
[3] For the sake of facilitating the Court's comprehension as to the dearth of materials transmitted by Defendant Perez, Plaintiff has identified the Exhibits in a fashion that will allow the Court to identify which attachments were attached to which e-mails.  Exhibit A-1 would denote the e-mail transmitted by the Defendant to his own personal G-mail account.  Exhibit A-2 would indicate the first attachment included in the Exhibit A-1 e-mail transmitted to Defendant's personal G-mail account, and so on and so forth up until the number of attachments transmitted within that particular e-mail chain.  Exhibit B-1 would indicate a new e-mail chain, as would any subsequent exhibits with a new letter or combination of letters.

**LEGAL STANDARD**

**I.**     **Standards on a Motion for Ex Parte Temporary Injunctive Relief Under Fed. R. Civ. Pro. 65(b)**

In order for preliminary relief to issue under Fed. R. Civ. Pro. 65(b), the movant must establish the following: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) that movant will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs the potential harm to the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000) In addition to the elements required for the issuance of an injunction, when moving *ex parte,* movants must also demonstrate that immediate and irreparable harm would result before the adverse party can be heard and the movant must state facts as to why notice should not be given to the adverse party.  Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty, etc., 415 U.S. 423, 439 (1974). As discussed below,

all of these factors heavily weigh in the Plaintiff's favor in the instant case. Most cannot be disputed whatsoever based on the evidence attached to Plaintiff's submission.

## ANALYSIS

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." Schiavo ex. rel Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citation omitted). Furthermore, when seeking relief *ex parte,* the movant must establish the threat of immediate and irreparable harm in the absence of the Court granting the relief sought. FED. R. CIV. PRO. 65(b)(1).

## MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT AND THE FLORIDA UNIFORM TRADE SECRETS ACT

The Defend Trade Secrets Act ("DTSA") affords a trade secret owner a Federal civil remedy if its trade secrets are used in interstate or foreign commerce. Agilsys, Inc. v. Hall, 2017 U.S. Dist. LEXIS 111824, at 27 (N.D. Ga. May 25, 2017) (citing 18 U.S.C. § 1836(b)(1)). The DTSA's definitions and remedies are "substantially similar" to the Florida Trade Secrets Act. Adams Arms, LLC v. Unified Weapon Systems Inc., 2016 U.S. Dist. LEXIS 132201, at 14 (M.D. Fla. Sept. 27, 2016). To prove liability under the DTSA, a plaintiff must establish ownership of: (a) a trade secret, (b) used in interstate or foreign commerce, which was (c) misappropriated. RealPage, Inc. v. Enter. Risk Control, LLC, 2017 U.S. Dist. LEXIS 122004, at 24 (E.D. Tx. Aug. 3, 2017).

I.      Plaintiff's Information Qualifies as a Trade Secret, Derives Independent Economic Value from Not Being Generally Known, and is Used in Interstate Commerce.

The DTSA's definition of trade secret is broad, allowing a wide range of proprietary information to fall within the purview of trade-secret protection under the statute. Specifically, trade secret is defined as: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S. Code § 1839 (3).

Based upon the Plaintiff's Verified Complaint allegations, and the Exhibits attached to the instant motion, this Court should conclude that Plaintiff was in possession of proprietary business information which qualifies as a trade secret within the broad definition provided by the DTSA. The customer lists, pricing formulas, contact points, schematics of how Plaintiff loads trucks, dispatches trucks, plans its lanes, plans its use of team vs solo drivers, prices its delivery lanes, delivery preferences were all gathered and developed by Plaintiff over the years at great expense. They further provide Plaintiff with a competitive business advantage from which Plaintiff derived an independent economic value.  Furthermore, as it is an interstate trucking company, the Plaintiff regularly engages in interstate commerce, as required under the DTSA. Moreover, based upon Defendant Perez's forwarding of the company secrets to his own personal e-mail helps establish

that this information was not generally known to the public, and preserved as confidential by the Plaintiff.   By virtue of employing Defendant Perez to solicit Plaintiff's customers using information stolen from Plaintiff, Defendants Pro Cold and Pro Intermodal are attempting to profit from Plaintiff's information, which bolsters Plaintiff's position that this material qualifies as a trade secret.  *See*, Heralds of the Gospel Found., Inc. v. Varela, 2017 U.S. Dist. LEXIS 98513, at 14 (S.D. Fla. June 23, 2017) (attempts to profit from the use of claimed trade secret information indicates that the information derives independent economic value; further when the information helps improve efficiency it likewise demonstrates independent economic value). Put another way if the materials were not proprietary and valuable, there would be no reason for Perez to have forwarded them to himself, no reason for him to solicit the information prior to his departure and likely no reason for Pro Intermodal to ask him terminate his employment with Florida Beauty under false pretenses. *See generally Verified Complaint* [D.E.2] wherein Perez feigns several reasons for leaving Plaintiff's employ.

II.      Plaintiff's Reasonable Steps to Secure Trade Secrets

Plaintiff's explicit written corporate policies regarding data security, found in the employee handbook attached to Plaintiff's Complaint [D.E. 2] as Exhibit I, is evidence that the Plaintiff sought to protect this information from disclosure. Examples of reasonable measures under the DTSA include password protection for computers, network servers, and other databases – as well as limiting "access to certain databases to individuals who require the information they contain." Chevron U.S.A., Inc. v. Guajardo, 2017 U.S. Dist. LEXIS 79860 at 4 (S.D. Tx. May 24, 2017). In addition to written policies governing data security, Plaintiff employs information technology staff to ensure the security of corporate data constituting trade secret material, and limits access on its electronic storage systems to employees with a legitimate need for the information in order to

execute their job functions by using passwords.  However, as a high-level manager with the Plaintiff, Defendant Perez's responsibilities required providing him with access to a large number of Plaintiff's trade secret documents in both electronic and paper formats.  An analysis of these facts indicates that Plaintiff took reasonable steps to secure the trade secret's confidential and secret contents, despite Defendant Perez's apparent ability to gain access to them.

III.    Defendants' Misappropriation

"Under the DTSA, 'misappropriation' is defined in several different ways." Brand Energy & Infrastructure Servs. v. Irex Contracting Group, 2017 U.S. Dist. LEXIS 43497, at 8 (E.D. Pa. Mar. 24, 2017) (under 18 U.S.C. § 1839(5)(B), "[t]he 'use' of another's trade secrets explicitly qualifies as an act of misappropriation under the DTSA."). Also, even though a trade secret may have been acquired prior to the DTSA's effective date of May 11, 2016, its later use still qualifies as a misappropriation under the DTSA. Adams Arms, LLC v. Unified Weapon Systems Inc., 2016 U.S. Dist. LEXIS 132201, at 17-19 (M.D. Fla. Sept. 27, 2016).

Misappropriation occurs in at least two instances. First, misappropriation can occur through mere "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by 'improper means.'" Id. at 15. Second, is through disclosure or use of another's trade secret without consent of the trade secret owner. Syntel Sterling, 2016 U.S. Dist. LEXIS 130918, at 6. Here, Defendants have engaged the "trifecta" of misappropriation. Defendant Perez not only misappropriated Plaintiff's trade secrets via improper means through unauthorized access; he disclosed those materials to his new employer and co-defendants, and then all Defendants used that information solicit Plaintiff's clients. 18 U.S.C. § 1839(5).

Based on the results of Plaintiff's investigation into Defendant Perez's removal of physical and digital data belonging to the company, Plaintiff has attached numerous Exhibits indicating that Defendant Perez forwarded hundreds of pages of Plaintiff's documents, including client lists, pricing information, and other critical business trade secrets (more thoroughly detailed above but not explicitly detailed to avoid disclosure following the Court's Order Denying Plaintiff's Motion to Seal) to his personal G-mail account.  *See Exhibits A-1 through TT-2: 90 Emails and Attachments.*[4] Defendants Pro Intermodal and Pro Cold Storage then put the information to use by arranging for Defendant Perez to visit some of Plaintiff's clients in person, to solicit their business. Defendants' solicitations of Plaintiff's customers using the trade secret data certainly constitutes misappropriation within the definition of the DTSA's provisions.

IV.    Plaintiff's Irreparable Injury

It has previously been established in this Circuit that "the loss of customers and goodwill is an 'irreparable' injury." Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991) (citing Spiegel v. City of Houston, 636 F.2d 997 (5th Cir. 1981)); see also Arthur J. Gallagher Serv. Co. v. Egan, 514 F. App'x 839, 843 (11th Cir. 2013) (citing Ferrero, 923 F.2d at 1449) ("The loss of longstanding clients and goodwill is an irreparable injury.")

In the instant case, Plaintiff's competitors now have the knowledge to undercut Plaintiff's pricing by the smallest of margins with almost every client Plaintiff has.  This will force Plaintiff to reduce its profit margin on large numbers of its accounts or lose those clients altogether, in an industry where costs and overhead are a constant ongoing concern, and endangers the viability of

---

[4] Plaintiff has redacted the majority of the attachments entirely but left the first pages with some specifics so that the Court can see the attachments are all company documents, not Mr. Perez's personal items left on a work computer or something of the sort.

Plaintiff's operations.[5]  Should Plaintiff's business be forced to close due to reduced profitability, or even reduce staffing or equipment stocks due to these pressures, Plaintiff will be deprived of valuable human capital or the equipment necessary to compete in the marketplace.  Plaintiff's reduced profits will also harm the company's expansion plans, and ability to explore new ventures within the marketplace.

V.      Balancing of the Equities and The Public's Interest

The Court should further enter an injunction against Defendants because protecting business interests in the security of their proprietary data is in the public interest. Simply put Plaintiff and companies like it are good for the economy, Plaintiff has paid hundreds of Miami and other citizens as employees and contracts for almost forty years. For almost forty years Plaintiff has provided transportation services not only on the holidays like Valentines Day and Mothers Day but also has assisted FEMA by leasing trailers, and otherwise supplied disaster relief. No trucking company can survive long term and provide jobs and logistics relief if a competitor can essentially steal its entire book of business *and the data that makes that book profitable.* Congress agreed to that end, implementing laws that protect companies that develop this information and use it to derive economic benefit for themselves, their employees and the US economy at large.

Defendants have victimized Plaintiff, and its ability to compete in the marketplace while simultaneously breaking numerous Congressional statutes intended to protect business and trade secrets from publication, use or dissemination by un-authorized third parties.  Congress passed the

---

[5] Logistics and transportation in general is an industry that runs on razor thin margins with extremely high overhead, low barrier to entry and extreme competition. The ability to take almost 40 years of industry know how from Plaintiff for a company like Pro Intermodal and Pro Cold Storage formed in 2008 and 2019 respectively cannot be overstated.

DTSA to prevent situations like those described therein from occurring by use of stiff penalties, and to improve the ability of commercial operations to protect their proprietary information.

Conversely, the harms suffered by the Defendants in being ordered to temporarily refrain from the temporary use, dissemination, or publication of the Plaintiff's trade secrets are dwarfed by the potential for harm to the Plaintiff, and the requirement of a bond, found in FED. RULE. CIV. PRO. 65, ensures that any financial damages to the Defendants will be compensated, in the event they succeed in extinguishing or terminating Plaintiff's requested injunctive relief. Plaintiff would note that before the Court considers the requirement of a bond, it should defer any such ruling on an amount until Defendant has been served and adduces evidence as to their potential damages so that Plaintiff can also adequately respond.

VI.     Substantial Likelihood of Success on the Merits

Plaintiff has demonstrated that it owns its trade secrets, has used them in commerce, that the trade secrets derive independent economic value from not being generally known, that reasonable measures were employed to safeguard the trade secrets, and the Defendants misappropriated Plaintiff Florida Beauty Flora's trade secrets, which leads to their substantial likelihood of success on the merits for this claim. More specifically, Plaintiff has put plainly before the Court the emails *where* Perez stole the information, put forth a verified Complaint stating that the items were being used for Pro Intermodal and Pro Cold Storage and also has now submitted an affidavit showing that Pro Intermodal after the theft introduced Perez as its newest sales manager.

## **<u>CONCLUSION</u>**

WHEREFORE, Florida Beauty respectfully requests entry of a temporary restraining order as follows:

1. Preventing the continued employ of Defendant Perez by Defendant Intermodal, Defendant Pro Cold, or the personal employ of Perez under Victor Veliz or any of his controlled or owned entities during allowable under the Rules, including extensions,

2. Preventing the solicitation of any of Plaintiff's customers during allowable under the Rules, including extensions, Plaintiff further request that Perez be enjoined from contacting any clients of Plaintiff to solicit business or inquire regarding logistics or transportation related needs

3. An order requiring deletion of any data removed by Defendant Perez and enjoining the use of such data while in the employ of Defendants,

4. In enforcing the at issue Order the Plaintiff prays that the Court order a neutral third party forensic expert in information technology ("IT") to review and ensure full deletion of information at the expense of the Defendants who have necessitated the conduct.

5. Plaintiff further requests that all bonuses and payments made to Perez by Intermodal, Veliz, or Pro Cold (along with all benefit received by the Corporate Defendants and Veliz) in consideration of the tortious conduct be disgorged by the Court and paid to Plaintiff.

6. Along with such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## LOCAL RULE 7.1 CERTIFICATION

Counsels for Plaintiff have conferred with counsel for the parties who may be affected by the relief sought in this motion and are known by the Plaintiff's attorneys to represent certain Defendants in this action in a good faith effort to resolve the issues raised herein, but have been unable to reach a resolution.[6]

Respectfully Submitted,

The Law Offices of
Christopher J. Malafis, P.A.

/s/ Christopher J. Malafis
Christopher J. Malafis, Esq.
Fla. Bar No.: 1007686
cjm@malafisfirm.com
service@malafisfirm.com

Ainsworth + Clancy, PLLC

/s Ryan Clancy
Ryan Clancy, Esq.
Fla. Bar No.: 117650
ryan@business-esq.com
info@business-esq.com
801 Brickell Ave., 9th FL
Miami, Florida 33131
(305) 600-3816 Phone
(305) 600-3817 Fax
*Attorneys for the Plaintiff*

---

[6] While a Return of Service has only been received with regard to Defendant Pro Cold Storage, counsels for the Plaintiff have had earlier contact with the law firm purporting to represent Defendants Pro Cold Storage and Pro Intermodal. Initially, opposing counsel contacted Plaintiffs to see if an accommodation could be found, but there was no accord on the matter. Counsel has attempted to ensure those particular Defendants had notice of Plaintiff's filing, and has transmitted the same and the supporting documents to Counsel for Defendants Pro Intermodal, Pro Cold Storage and Victor Veliz.

## <u>CERTIFICATION PURUSANT TO FED. R. CIV. PRO. 56(B)</u>[7]

The undersigned appear as counsel for the Plaintiffs in this action and mindful of the requirements of Fed. R. Civ. Pro. 56(b) declare as follows based on personal knowledge and being of sound mind and the age of majority:

1. Your Affiants, Ryan Clancy and Christopher Malafis are members of good standing with the Florida Bar and the Southern District of Florida.

2. Your Affiants notified the Defendants through cease and desist letters prior to filing this lawsuit of the nature of this dispute and the Defendants' Pro Intermodal, LLC, Pro Cold Storage Inc. and Victor Veliz's counsel (not of record) Carlos Santisteban has stated in writing he is aware of the lawsuit and monitoring the docket. Furthermore Defendants have made service more than difficult but it is being attempted, and has been perfected on Wanda Ramos for Pro Cold Storage. All reasonable efforts have been made to provide the Defendant's notice of what is going on, including the pleadings and the seeking of temporary restraining orders such as the relief sought herein. Service was attempted by Caplan Caplan and Caplan several times specifically but not limited to April 2, 2020 and April 8, 2020.

3. Plaintiffs have filed a verified complaint in this matter that among other things shows a risk of immediate risk and irreparable harm in this case. Furthermore:

    a. **This matter is an emergency as Mother's Day sales will begin to finalize this coming Monday**, this Motion is being filed this late as it had to be reformatted following denial of the Plaintiff's Motion to File Under Seal which required review and redaction of thousands of pages of documents with careful eye to not waive

---

[7] Filed as a separate affidavit as well.

and disclose a single trade secret while also allowing the Court a clear view as to what is going on.

b.  Approximately half of the Plaintiff's net profit is made in the following weeks annually for the Mother's Day holiday.

c.  Thus, if this matter has to wait for Defendant's to be heard, the Defendant's will already have all the Mother's Day customers of the Plaintiff and Plaintiff will have lost a half of its yearly profit stream.

d.  Furthermore the very nature of the Defendants actions highlights a real risk that they will use the time in preparing a response to also destroy and secret evidence, solicit more business.

4.  **Your Affiants hereby certify as set out above that specific facts set out both in this declaration and in the verified complaint [D.E. 2] establish immediate risk of irreparably injury, loss and damage will result if the relief is not granted prior to the adverse party being heard in opposition and further that Plaintiff has set set in detail the efforts made to give notice and also why notice should not be required.**

Pursuant to 28 USC §1746, We, the undersigned attorneys declare under penalty of perjury that the foregoing is true and correct and electronically executed on April 24, 2020.

The Law Offices of
Christopher J. Malafis, P.A.

/s/ Christopher J. Malafis
Christopher J. Malafis, Esq.
Fla. Bar No.: 1007686
cjm@malafisfirm.com
service@malafisfirm.com

Ainsworth + Clancy, PLLC

/s Ryan Clancy

Ryan Clancy, Esq.
Fla. Bar No.: 117650
ryan@business-esq.com
info@business-esq.com
801 Brickell Ave., 9th FL
Miami, Florida 33131
(305) 600-3816 Phone
(305) 600-3817 Fax
*Attorneys for the Plaintiff*