## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-20966-CIV-ALTONAGA/Goodman

**FLORIDA BEAUTY FLORA INC.,**

      Plaintiff,

v.

**PRO INTERMODAL L.L.C.**, *et al*.,

      Defendants.

_____/

### ORDER

**THIS CAUSE** came before the Court on Defendants, Pro Intermodal L.L.C., Pro Cold

Storage, Inc., Victor Veliz, and Gustavo Perez's[1] Joint Motion to Dismiss Plaintiff's Complaint

[ECF No. 41], filed on May 18, 2020.  Plaintiff filed a Response [ECF No. 43] to the Motion, to

which Defendants filed a Reply [ECF No. 49].  The Court has carefully considered the Verified

Complaint [ECF No. 1], the parties' written submissions, the record, and applicable law.  For the

following reasons, the Motion is granted in part and denied in part.

### I.        BACKGROUND

This action arises from a former employee's alleged dissemination of privileged,

confidential company information and trade secrets to competitors.  (*See generally* Compl.).

Plaintiff, Florida Beauty Flora, Inc., is a Florida corporation with its principal place of business in

Miami, Florida.  (*See id.* ¶ 3).  Defendant, Intermodal, is a Florida limited liability company with

its principal place of business in Hialeah, Florida.  (*See id.* ¶ 4).  Defendant, Pro Cold, is a Florida

corporation with its principal place of business in Miami, Florida.  (*See id.* ¶ 5).  Defendants, Perez

---

[1] Defendants are Pro Intermodal L.L.C. ("Intermodal"), Pro Cold Storage, Inc. ("Pro Cold"), Victor Veliz ("Veliz"; collectively, the "Intermodal Defendants"); and Gustavo Perez ("Perez"; together with the Intermodal Defendants, "Defendants").

and Veliz, are residents of Miami-Dade County, Florida. (*See id.* ¶¶ 6–7).

Plaintiff is a refrigerated carrier providing transportation, warehouse, and logistical services to clients in the floral and perishable industries throughout the United States. (*See id.* ¶¶ 14–15). Intermodal and Pro Cold are Plaintiff's direct competitors. (*See id.* ¶¶ 16–18). Veliz is Pro Cold's President and Intermodal's member-manager. (*See id.* ¶¶ 19–20). Intermodal and Pro Cold have attempted to acquire Plaintiff's customer base, confidential information, and trade secrets through the poaching of Plaintiff's employees. (*See id.* ¶¶ 17–18). Plaintiff requires its employees to execute non-compete agreements restricting employment with competitors and the future solicitation of Plaintiff's clients. (*See id.* ¶ 21).

Perez was Plaintiff's employee for eleven years. (*See id.* ¶ 23). Perez held a position as sales manager and operated the Floral Program and Customer Service department. (*See id.*). Perez was a critical member of Plaintiff's management staff. (*See id.* ¶ 24). Within that role, Perez was "privy to confidential company information[] and company trade secrets needed to perform his job function." (*Id.* ¶ 25 (alteration added)). Perez developed a close relationship of trust and confidence with Plaintiff's principal shareholder and Chief Financial Officer, as well as its President. (*See id.* ¶ 24).

Plaintiff disseminated an employee manual to each of its employees that "detailed company policies on data security, computer usage[,] and securing company confidential information." (*Id.* ¶ 26 (alteration added)). Perez received a copy of Plaintiff's employee manual and never indicated he did not understand its terms and conditions. (*See id.*). Perez was fully aware he was not to disclose any confidential information save for the limited purposes delineated in the employee manual. (*See id.*).

On February 11, 2020, Perez submitted his notice of intended resignation to Plaintiff, citing

health issues. (*See id.* ¶¶ 23, 27). Immediately thereafter, Plaintiff questioned Perez, asking whether he was accepting a position with Intermodal. (*See id.* ¶ 27). Perez informed Plaintiff his departure was based solely on health issues and that he neither accepted nor sought employment with Intermodal. (*See id.* ¶¶ 27–28).

Following his notice of resignation, Perez sent privileged, confidential company information from his company email account to his personal email account. (*See id.* ¶ 29). Trade secrets "crucial to the continued successful operations of [] Plaintiff's business operations[]" were among the forwarded information; those trade secrets were "subject to rigorous security measures intended to prevent theft[.]" (*Id.* (alterations added)). Although Plaintiff authorized Perez to access his company email account, Perez "exceeded the scope of that authority[]" by "forward[ing] proprietary company information and trade secrets." (*Id.* ¶¶ 30–31 (alterations added)). Perez did not access his company email account for a legitimate business purpose, nor did he have prior company authorization to disseminate trade secrets to his personal email account. (*See id.* ¶¶ 31–32).

On February 14, 2020, Perez sent a companywide email indicating he was leaving his position, effective immediately. (*See id.* ¶ 33). That same day, Plaintiff inspected Perez's office and discovered Perez misappropriated numerous company documents. (*See id.* ¶ 34). Perez acquired "the entire client list, vendor list, pricing lists, most recent accounts receivable aging report, copies of customer contracts, Electronic Data Interchange program opreations [sic], and copies of insurance documents considered highly privileged and confidential by Plaintiff." (*Id.*).

On February 17, 2020, Plaintiff learned Perez was introduced as Intermodal's new sales manager. (*See id.* ¶ 35). Shortly thereafter, Perez, at Intermodal's request, "traveled to North Carolina to solicit the business of two of Plaintiff's largest accounts, Buds and Blooms[] and Derita

3

Floral Supply." (*Id.* ¶ 36 (alteration added)). Plaintiff has received reports that Defendants are contacting Plaintiff's clients "in an attempt to undercut Plaintiff's pricing and business relationships using the trade secrets stolen from Plaintiff by [] Perez." (*Id.* ¶ 37 (alteration added)). Plaintiff alleges Defendants agreed to acquire Plaintiff's trade secrets for their own use in the operations of Pro Cold and Intermodal. (*See id.* ¶¶ 38–39).

Plaintiff identifies as trade secrets its "customer list, pricing information and formulas, surcharge rate calculation, sales forecasting data, customer restrictions and requirements information, customer ordering databases and history, [and] future business expansion plans." (*Id.* ¶ 40 (alteration added)). Plaintiff has engaged in numerous steps to control access to these trade secrets, as well as other confidential business information. (*See id.* ¶¶ 41–42). Such measures include keeping privileged company information on a need-to-know basis, limiting printing privileges, subjecting all company mobile devices to inspection and administrator password control, and restricting employee interactions with the company network. (*See id.* ¶¶ 43–44).

To protect its trade secrets, as well as client relationships and goodwill, Plaintiff distributes an employee manual to its employees. (*See id.* ¶¶ 26, 45–46). The employee manual informs employees Plaintiff may inspect "all mobile devices owned by the company" and require "employees to comply with company policies regarding the protection of the company's confidential and proprietary information when using personal devices." (*Id.* ¶¶ 45–46 (quotation marks omitted)). Certain provisions in the employee manual also restrict usage of the company network. (*See id.* ¶ 47).

To secure the integrity of its trade secrets, "Plaintiff employs a full-time information technology professional to protect the company's electronic data[] and records." (*Id.* ¶ 50 (alteration added); *see also id.* ¶ 49). Plaintiff utilizes security software "including a firewall, anti-

virus software, and monitoring of employee device usage[.]" (*Id.* ¶ 52 (alteration added)).  Plaintiff also restricts "dissemination of [] data from company or personal devices used by employees." (*Id.* ¶ 53 (alteration added)).

Despite these protective measures, Perez misappropriated Plaintiff's trade secret information for Defendants' benefit.  (*See id.* ¶¶ 55–56).  Defendants agreed Perez would utilize his access to Plaintiff's data systems and information to gain access to Plaintiff's trade secrets. (*See id.* ¶¶ 58–59).  Defendants formed a conspiracy by "making an agreement to obtain Plaintiff's trade secrets by unauthorized use of Plaintiff's computer systems, and the physical removal of Plaintiff's secured documents, and use them in their business operations." (*Id.* ¶ 60).  Defendants took acts in furtherance of the conspiracy by (1) sending unauthorized emails, (2) employing Perez after his departure from Plaintiff, and (3) soliciting Plaintiff's clients.  (*See id.* ¶¶ 61–63).

The Complaint asserts eleven claims: injunctive relief against Perez (Count I) (*see id.* ¶¶ 64–74); injunctive relief against the Intermodal Defendants (Count II) (*see id.* ¶¶ 75–86); violations of the Defend Trade Secrets Act, 18 U.S.C. section 1836 *et seq.*, against Defendants (Count III) (*see id.* ¶¶ 87–98); violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. section 1030 *et seq.*, against Defendants (Count IV) (*see id.* ¶¶ 99–110); violations of the Economic Espionage Act, 18 U.S.C. section 1832 *et seq.*, against Defendants (Count V) (*see id.* ¶¶ 111–18); violations of the Florida Uniform Trade Secrets Act, section 688.02, Florida Statutes, against Defendants (Count VI) (*see id.* ¶¶ 119–28); tortious interference with an advantageous business relationship against Intermodal and Pro Cold (Count VII) (*see id.* ¶¶ 129–35); civil conspiracy against Defendants (Count VIII) (*see id.* ¶¶ 136–43); breach of fiduciary duty against Perez (Count IX) (*see id.* ¶¶ 144–47); aiding and abetting breaches of fiduciary duty against the Intermodal Defendants (Count X) (*see id.* ¶¶ 148–53); and violations of the Racketeer Influence

5

and Corrupt Organizations Act ("RICO"), 18 U.S.C. section 1962 *et seq.*, against Defendants (Count XI) (*see id.* ¶¶ 154–72).

Defendants move to dismiss Counts IV, VII, VIII, and XI for failure to satisfy Federal Rules of Civil Procedure 8(a) and 9(b) and for failure to state claims for relief under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Mot.).

## II. LEGAL STANDARDS

Rule 8(a) requires a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2) (alteration added). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (alteration added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

CASE NO. 20-20966-CIV-ALTONAGA/Goodman

When reviewing a motion to dismiss, a court must construe the complaint in the light most

favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross*

*& Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*,

835 F.2d 270, 272 (11th Cir. 1988)).

### III.   DISCUSSION

Defendants argue Plaintiff fails to satisfy the pleading standards for plausibility and

particularity.[2]  Defendants further contend Plaintiff fails to state claims for relief in Count IV

(CFAA claim against Defendants), Count VII (tortious interference claim against Intermodal and

Pro Cold), Count VIII (civil conspiracy claim against Defendants), and Count XI (RICO claim

against Defendants).[3]  (*See generally* Mot.).  The Court addresses each count in turn.

---

[2] Defendants insist "Plaintiff's Complaint fails to satisfy Rule 8(a)'s [p]lausibility [s]tandard and Rule 9(b)'s [h]eightened [p]articularized [p]leading [s]tandard." (Mot. 6 (alterations added; bold omitted)).  The Court is unpersuaded and will not address Defendants' contentions in detail.

As to Rule 8, Defendants contend Plaintiff's allegations "are not entitled to the assumption of truth[]" and request that the Court infer "the obvious alternate explanations suggesting lawful conduct[.]" (*Id.* 7 (alterations added)).  Defendants then go on to list "alternate explanations" that "suggest lawful conduct[]" on the part of the Intermodal Defendants. (*Id.* 7–8 (alteration added)).  Despite Defendants' insistence, the Court will not dismiss the Intermodal Defendants simply because Defendants can provide a list of possible alternative explanations to Plaintiff's allegations.

Regarding Rule 9(b), Defendants insist "[b]ecause Plaintiff's claims against [] Defendants sound in fraud[,] they must satisfy Rule 9(b)." (*Id.* 8. (alterations added)).  But rather than specifically set out how Plaintiff's pleading fails to satisfy Rule 9(b), Defendants merely provide general rule statements and conclude the "Complaint does not comply with Rule 9(b)[.]" (*Id.* (alteration added)).  As Plaintiff correctly points out, Defendants neither raise count-specific challenges nor address Plaintiff's allegations. (*See* Resp. 8–9).  The Court will not assume Rule 9(b) applies to Plaintiff's claims as pleaded, nor will it apply these general arguments to each count on its own.  Tellingly, in their Reply, Defendants do not refute — or even address — Plaintiff's detailed responses.  (*See generally* Reply).

[3] Defendants state Plaintiff fails to sufficiently allege Veliz acted in his individual capacity to attach personality liability.  (*See* Mot. 30–32).  Defendants' analysis appears to contradict their position.  Critically, Defendants cite numerous allegations directed specifically at Veliz. (*See id.* 31).  Plaintiff provides an apt observation: "Defendants' own brief acknowledges [] Plaintiff asserted at least 8 allegations against [] Veliz." (Resp. 20 (alterations added)).  Plaintiff then goes on to persuasively refute Defendants' position.  (*See id.*).  Defendants do not address Plaintiff's rebuttal at all.  (*See generally* Reply).  The Court agrees Plaintiff's allegations are specifically directed at Veliz in his individual capacity.  (*See* Compl. ¶¶ 38–39, 56, 58–60).

### A.  Count IV – CFAA Claim against Defendants

In Count IV, Plaintiff asserts a claim against Defendants under the CFAA.  (*See* Compl. ¶¶ 99–110).  "The CFAA punishes anyone 'who intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer.'"  *Hall v. Sargeant*, No. 18-80748-Civ, 2020 WL 1536435, at *28 (S.D. Fla. Mar. 30, 2020) (alterations adopted; quoting 18 U.S.C. § 1030(a)(2); other citation omitted).  "While the CFAA is predominately designed as a criminal statute to punish computer hacking, the statute does allow private civil actions under a narrow set of circumstances."  *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1057 (M.D. Fla. 2018) (citations and footnote call number omitted).  "A CFAA claim has four elements: (1) a defendant intentionally accessed a protected computer; (2) without authorization or exceeding authorized access; and the defendant (3) thereby obtained information; and (4) the plaintiff suffered damage or loss of at least $5,000.00."  *Hall*, 2020 WL 1536435, at *28 (citations omitted).

Defendants raise two principal arguments in support of their request for dismissal of Count IV.  (*See* Mot. 9–18; Reply 1–4).  First, Defendants contend Perez was authorized to access the information at issue.  (*See* Mot. 9–16).  Second, Defendants insist Plaintiff fails to plead sufficient factual allegations to show "loss" under the CFAA.  (*See id.* 16–18).

In challenging the authorization element, Defendants state Plaintiff's CFAA claim fails because no unauthorized access occurred.  (*See id.* 9–16).  Specifically, Defendants contend because Perez was authorized to access Plaintiff's company device for legitimate business purposes, Perez did not exceed his authorized access by forwarding emails to his personal account.  (*See id.* 11–12).  Plaintiff insists Perez "violated the CFAA by virtue of exceeding the scope of his authority to transmit company trade secrets to his personal account." (Resp. 10).  According to

8

Plaintiff, the Complaint "detail[s] a scheme of unauthorized access[] [and] how that access was in contravention of Plaintiff's [e]mployee [manual] and policies." (*Id.* 11 (alterations added)). The Court agrees with Plaintiff.

"A violation of 18 U.S.C. [section] 1030(a)(2)(C) requires the violator to either intentionally access a computer without authorization or to exceed authorized access, and thereby obtain information from a protected computer." *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1317 (S.D. Fla. 2018) (alteration added; other alterations adopted; emphasis and quotation marks omitted). "Although the CFAA does not define 'without authorization,' it makes clear that 'exceeds authorized access' means 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter.'" *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, No. 19-81644-Civ, 2020 WL 3064777, at *6 (S.D. Fla. June 9, 2020) (quoting 18 U.S.C. § 1030(e)(6)).

Plaintiff alleges Perez exceeded his authorized access by using his company device for nonbusiness purposes. (*See* Compl. ¶¶ 29–32). Allegedly: (1) Perez used the company email system to forward "detailed company information that was privileged, confidential, and kept in the strictest confidence" (*id.* ¶ 29); (2) Perez forwarded numerous trade secrets for personal use and without approval from Plaintiff (*see id.* ¶¶ 29, 31–32); (3) Perez was only permitted to use his company device and access company information "for legitimate business purposes[] and with prior authorization" pursuant to a written company policy (*id.* ¶ 30 (alteration added)); (4) Perez "did not forward proprietary company information and trade secrets for a legitimate business purpose[]" (*id.* ¶ 31 (alteration added)); and (5) Perez "did not have prior authorization to disseminate company trade secrets to his personal e-mail account, nor would it have been given under any circumstances[]" (*id.* ¶ 32 (alteration added)). These allegations sufficiently explain

how Perez "exceed[ed] authorized access[]" when he used the company device and company email

for nonbusiness purposes.  18 U.S.C. § 1030(a)(2) (alterations added)

Undeterred, Defendants urge[4] the Court to apply a "narrow view of the CFAA" and "hold[]

that once an employee is provided access to a computer, he cannot exceed that access or act without

authorization."  (Mot. 11 (alteration added)).  The Court declines to construe Plaintiff's claim in

this way.  Rather, the Court applies the Eleventh Circuit's broad interpretation of exceeding

authorized access under the CFAA.[5]  *See United States v. Rodriguez*, 628 F.3d 1258, 1363 (11th

Cir. 2010) (extending liability to a defendant-employee who misused information on a protected

device even though he had authority to access the device for legitimate business purposes);[6]

*EarthCam, Inc.*, 703 F. App'x at 808 ("[O]ne of the lessons from *Rodriguez* may be that a person

---

[4] Defendants also contend — in an offhand manner — that "like any action based in fraud, Plaintiff must satisfy Rule 9(b)." (Mot. 11).  Because Defendants do not elaborate on this point, and neither does the Court.

[5] *See Hamilton Grp. Funding, Inc.*, 311 F. Supp. 3d at 1317–19 (providing detailed discussion of the broad and narrow readings of the term "exceeds authorized access" (quotation marks omitted)).

[6] Defendants ignore the Eleventh Circuit's *Rodriguez* decision in their Motion.  (*See generally* Mot.).  In their Reply, Defendants contend *Rodriguez* "must not be followed as it relates to a criminal prosecution for intentionally accessing records of the social security administration, not private business records that the defendant was authorized to access."  (Reply 2).  Yet, in *EarthCam, Inc. v. OxBlue Corp.*, 703 F. App'x 803 (11th Cir. 2017), in addressing a civil CFAA claim, the Eleventh Circuit noted it was bound by the *Rodriguez* decision.  *See EarthCam, Inc.*, 703 F. App'x at 808 n.2; *see also id.* at 808 ("We have, in one published opinion, expounded on what it means to 'exceed authorized access.'" (citation omitted)); *Hamilton Grp. Funding, Inc.*, 311 F. Supp. 3d at 1318–19 (explaining *EarthCam, Inc.* "appears to affirm both *Rodriguez*'s broader reading of the term, as well as an interpretation [] the [] decision [] does not narrow its holding." (alterations added)).

Numerous courts in this District have followed *Rodriguez* and applied its broad interpretation to civil claims under the CFAA.  *See, e.g.*, *Hamilton Grp. Funding, Inc.*, 311 F. Supp. 3d at 1319 ("This Court concludes that *Rodriguez* binds the Court to a broad interpretation of exceeding authorized access under the CFAA."); *Glob. Physics Sols., Inc. v. Benjamin*, No. 17-60662-Civ, 2017 WL 6948721, at *2 (S.D. Fla. June 26, 2017) ("When an employee is authorized to access or change information but accesses that information in a way that violates company policy, the employee has exceeded his or her authorized access." (citing *Rodriguez*, 628 F.3d 1258)); *Lighthouse List Co., LLC v. Cross Hatch Ventures Corp.*, No. 13-60524-Civ, 2013 WL 11977916, at *6 (S.D. Fla. Aug. 13, 2013) (finding the Eleventh Circuit's decision in *Rodriguez* controlling).

exceeds authorized access if he or she uses the access in a way that contravenes any policy or term of use governing the computer in question." (alteration added)).

In sum, Plaintiff has sufficiently alleged Perez "exceed[ed] authorized access[]" when he used his company device for nonbusiness purposes. 18 U.S.C. § 1030(a)(2) (alterations added); *see also, e.g.*, *Glob. Physics Sols., Inc.*, 2017 WL 6948721, at *2 (declining to dismiss a CFAA claim where the plaintiff-employer alleged the defendant-employee accessed company property for a purpose other than to benefit the plaintiff-employer in contravention of the parties' employment agreement); *Lighthouse List Co., LLC*, 2013 WL 11977916, at *6 (declining to dismiss a CFAA claim where the plaintiff alleged the defendants were aware of — and, while still employed, violated — company policy against accessing data from the plaintiff's computer for personal use).

Defendants next contend Plaintiff fails to adequately allege a "loss" within the meaning of 18 U.S.C. section 1030(e)(11).  (*See* Mot. 16–18).  The CFAA's definition of "loss" includes "two separate types of loss: (1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) (citing 18 U.S.C. § 1030(e)(11)).  In other words, a CFAA plaintiff "may allege losses related to costs incurred in responding to the violation, assessing its damage, and restoring data and systems to their condition prior to the alleged violation, without having suffered an interruption of services." *Parsont*, 2020 WL 3064777, at *9 (quotation marks and citation omitted); *see also Brown Jordan Int'l, Inc.*, 846 F.3d at 1174

("'Loss' includes the direct costs of responding to the violation in the first portion of the definition, and consequential damages resulting from interruption of service in the second.").

Defendants insist Plaintiff "has not adequately alleged it suffered 'damage' or 'loss' as defined in the CFAA." (Mot. 18). In Defendants' view, Plaintiff's damage allegations are "baseless, boilerplate, speculative and insufficient as a matter of law." (*Id.* 16). Plaintiff avers "it is [] relatively simple [] to conclude [] Plaintiff has alleged a $5000.00 loss" if the Court construes all "reasonable inferences in favor of [] Plaintiff." (Resp. 12 (alterations added)). On this point, the Court agrees with Defendants.

Plaintiff contends paragraphs 36 and 37 are sufficient to show "loss" under the CFAA. (*See id.* 12 (citing Compl. ¶¶ 36–37)). Plaintiff alleges: (1) Perez "traveled to North Carolina to solicit business of two of Plaintiff's largest accounts[]" (Compl. ¶ 36 (alteration added)); and (2) Defendants "are contacting Plaintiff's clients in an attempt to undercut Plaintiff's pricing and business relationships using the trade secrets stolen from Plaintiff by [] Perez[]" (*id.* ¶ 37 (alterations added)).

Quite simply, Plaintiff's general allegations that Defendants attempted to enter into new business ventures with Plaintiff's clients by using stolen trade secrets are insufficient to demonstrate "loss" under the statute. *See Hall*, 2020 WL 1536435, at *31 (identifying "two ways for a CFAA plaintiff to show 'loss': (1) lost revenues and costs as a result of interruption of services, and (2) costs incurred in responding to a CFAA violation" (citation omitted)); *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1345 (M.D. Fla. 2014) ("The loss of trade secrets is not considered 'loss' under the CFAA." (citation omitted)). Plaintiff does not allege it suffered an interruption of service as a result of Perez's alleged unauthorized access of confidential

information and trade secrets.  Nor does Plaintiff allege it incurred costs in responding to Perez's unauthorized access.[7]

In short, Plaintiff's alleged losses do not fall within the "two separate types of loss[es]" required to state a claim under the CFAA.  *Brown Jordan Int'l, Inc.*, 846 F.3d at 1174 (alteration added).  Count IV is thus dismissed with leave to amend.

## B.  Count VII – Tortious Interference Claim against Intermodal and Pro Cold

In Count VII, Plaintiff claims Intermodal and Pro Cold interfered with Plaintiff's business relationships with Buds and Blooms and Derita Floral Supply.  (*See* Compl. ¶¶ 129–35).  To state a claim under Florida law for tortious interference with a business relationship, a plaintiff must allege "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the business relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship."  *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).  "The first element — existence of a business relationship — requires (1) a business relationship evidenced by an actual and identifiable understanding or agreement and (2) a relationship with a particular party, and not just a relationship with the general business community."  *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 13-cv-80645, 2014 WL 12461349, at *11 (S.D. Fla. Jan. 7, 2014) (quotation marks and citations omitted).

Plaintiff need not allege the presence of an actual, enforceable contract in order to establish the existence of a business relationship.  *See Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift*

---

[7] Plaintiff claims it has "expended costs within its own business structure as Plaintiff's IT employees were reassigned from their normal tasks to investigate" Perez's alleged corporate espionage.  (Resp. 13).  But Plaintiff claims this loss for the first time in response to Defendants' Motion; no such allegations appear in the Complaint. (*Compare id.*, *with* Compl. ¶ 108).  *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355–56 n.6 (S.D. Fla. 2012) (explaining a plaintiff "may not amend a complaint via a response to a motion to dismiss.").

*Shops, Inc.*, 361 So. 2d 769, 772 (Fla. 4th DCA 1978) (noting that, where no actual contract exists, there must at least be "some attendant legal rights." (citation omitted)); *see also Register v. Pierce*, 530 So. 2d 990, 993 (Fla. 1st DCA 1988) ("[T]he alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." (alteration added; citation omitted)). Additionally, a business relationship "generally requires 'an understanding between the parties that would have been completed had the defendant not interfered.'" *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (alteration adopted; quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)).

Defendants contend Plaintiff alleges no facts demonstrating Intermodal and Pro Cold's knowledge of "any specific or identifiable business relationship or contracts Plaintiff had with either Buds and Blooms or Derita Floral Supply." (Mot. 29). Defendants insist Plaintiff "has not plead specific conduct to an identifiable 'legal right' and resulting harm," which, according to Defendants, "warrants the dismissal of Count VII." (*Id.*). Plaintiff disagrees, explaining it "very clearly pled the existence of a business relationship with both Buds and Blooms[] and Derita Floral Supply[]"; and Intermodal and Pro Cold's solicitation of those clients "constitute[s] an unjustified [] and intentional [interference] with Plaintiff's [business] relationship." (Resp. 18–19 (alterations added)). Plaintiff insists Defendants' arguments "should be disregarded . . . as unpersuasive[.]" (*Id.* 19 (alterations added)). Plaintiff is mistaken.

The relevant allegations are: (1) Perez, at the request of Intermodal, "solicit[ed] the business of two of Plaintiff's largest accounts, Buds and Blooms[] and Derita Floral Supply (Compl. ¶ 36 (alterations added)); (2) Intermodal and Pro Cold knew of Plaintiff's business relationships with Buds and Blooms and Derita Floral Supply (*see id.* ¶¶ 130–31); (3) Intermodal and Pro Cold "interfered with the business relationship of Plaintiff by coordinating the solicitation

of Plaintiff's clients using stolen trade secrets belonging to Plaintiff[]" (*id.* ¶ 132 (alteration added)); and (4) "Defendants' conduct has damaged Plaintiff's relationship with two of its largest clients" and "will continue to cause damage to Plaintiff[]" (*id.* ¶¶ 133–34 (alteration added)). Succinctly stated, Plaintiff alleges, because Intermodal and Pro Cold solicited two of Plaintiff's clients, Plaintiff has suffered (and will continue to suffer) damages.  (*See id.* ¶¶ 129–34).

Plaintiff's allegations are clearly deficient.  Plaintiff neither alleges any facts identifying a legal right with which Defendants interfered, nor do the factual allegations specify a harm resulting from interference with such legal right.  Nor does Plaintiff identify any understanding between it and its existing clients which would have been completed but for Intermodal and Pro Cold's interference.  Simply alleging — in conclusory fashion — a business interest, while generally referring to existing clients by name, is not sufficient to demonstrate an understanding that would have been completed but for Intermodal and Pro Cold's interference.  *See MQ Assocs., Inc. v. N. Bay Imaging, LLC*, 270 F. App'x 761, 766 (11th Cir. 2008) (affirming dismissal of a tortious interference claim where the plaintiff failed to allege an "identifiable agreement with its past customers that they would return for future business[]" and explaining "[t]he mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim." (alterations added; quotation marks and citations omitted)); *Sloan v. Shatner*, No. 8:17-cv-332, 2017 WL 3332232, at *3 (M.D. Fla. Aug. 3, 2017) (dismissing tortious interference claims even though the plaintiff identified particular parties, because the plaintiff neither alleged any existing or prospective legal rights with those parties nor identified any understanding between the parties that would have been completed but for the defendant's interference); *Drew Estate Holding Co. v. Fantasia Distribution, Inc.*, No. 11-21900-Civ, 2011 WL 13116077, at *3 (S.D. Fla. Nov. 23, 2011) (dismissing a tortious interference claim where the plaintiff failed to set forth facts

establishing an understanding between two parties which would have been completed but for the defendant's interference).

In short, Count VII is dismissed.  If Plaintiff has a good-faith basis to amend Count VII, it may do so.

### C.  Count VIII: Civil Conspiracy Claim against Defendants

Count VIII asserts a civil conspiracy claim against Defendants.  (*See* Compl. ¶¶ 136–43). "A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015) (citation omitted).  "Florida law does not recognize an independent cause of action for civil conspiracy; rather, a valid claim must allege an underlying illegal act or tort on which the conspiracy is based." *Merch. One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 WL 248608, at *8 (S.D. Fla. Jan. 16, 2020) (collecting cases); *see also Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) ("[A]n actionable conspiracy requires an actionable underlying tort or wrong." (alteration added; citation omitted)).

The Court declines Defendants' invitation to engage in an extended discussion regarding Plaintiff's civil conspiracy claim, especially given the inadequate briefing addressing the issue. Defendants' argument is reduced to two lines: (1) "if the Court dismisses the underlying causes of action, the conspiracy claim cannot stand[]"; and (2) "like any action based in fraud, civil conspiracy must satisfy Rule 9(b)."  (Mot. 30 (alteration added)).  Defendants neither address the underlying wrong — misappropriation of trade secrets[8] — that forms the basis of Plaintiff's

---

[8] Plaintiff alleges: (1) Defendants "forged an agreement whereby Perez would secure trade secrets belonging to Plaintiff by accessing Plaintiff's computer systems prior to Defendant Perez's official departure from Plaintiff's company[]" (Compl. ¶ 137 (alteration added)); and (2) "[u]nder the agreement, [] Perez would acquire Plaintiff's trade secrets" (*id.* ¶ 138 (alterations added)).  Although Plaintiff neither

conspiracy claim nor discuss whether Plaintiff's allegations are sufficient to state a claim for conspiracy. *See Whetstone Holdings, LLC v. Thorell*, No. 13-cv-24138, 2014 WL 11906593, at *4 (S.D. Fla. Feb. 5, 2014) (concluding conspiracy to misappropriate trade secrets need not satisfy Rule 9(b)). Defendants' perfunctory argument is singularly unpersuasive.

In short, Count VIII may proceed.[9]

### D.  Count XI – Federal RICO Claim against Defendants

In Count XI, Plaintiff alleges a civil RICO claim against Defendants. (*See* Compl. ¶¶ 154–72). The RICO statute provides "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1964(c) (alteration added). To assert a RICO claim, a plaintiff must plead "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002) (quoting 18 U.S.C. §§ 1962(a)–(c)). "A civil plaintiff must also show (1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation." *Aim Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-cv-60292, 2020 WL 209860, at *14 (S.D. Fla. Jan. 13, 2020) (quotation marks omitted; quoting *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016); other citation omitted).

---

provides a statutory basis for its claim, nor specifically identifies the legal wrong, it appears Plaintiff's claim is based on Defendants' conspiracy to misappropriate trade secrets.

[9] The Court notes Plaintiff's briefing is deficient as well. Instead of addressing the Complaint's allegations, Plaintiff states "even if the Court were to grant [] Defendants' requested relief by dismissing Counts IV, VII, VIII and XI of [] Plaintiff's Complaint, there are remaining tort claims sufficient to attach liability to the defendants for civil conspiracy." (Resp. 19 (alterations added)). A review of the Complaint, however, reveals Plaintiff does not assert any of these various tort theories as the basis for its conspiracy claim against Defendants. Again, Plaintiff may not amend its Complaint through a response to a motion to dismiss. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015).

Defendants primarily challenge[10] the sufficiency of Plaintiff's pattern-of-racketeering-activity allegations. (*See* Mot. 20–27). "An essential element of any RICO claim is a pattern of racketeering activity." *Viridis Corp. v. TCA Glob. Credit Master Fund,* LP, 155 F. Supp. 3d 1344, 1363 (S.D. Fla. 2015) (quotation marks and citation omitted). "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original; citations omitted).

A plaintiff must also demonstrate the alleged predicate acts "themselves amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (alteration added; emphasis in original). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (citation omitted). Relevant here, the open-ended threat of continuity[11] may be established by showing "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future[]" or "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 242 (alteration added).

---

[10] Defendants also state Plaintiff fails to allege: (1) the Intermodal Defendants shared a common purpose with the alleged enterprise; (2) the Intermodal Defendants participated in the operation or management of the enterprise; (3) a RICO person distinct from the RICO enterprise; and (4) a loss sufficient to confer RICO standing. (*See* Mot. 18–28). While Defendants raise these additional grounds to support dismissal of the RICO claim, it is inefficient for the Court to address each argument because, as discussed, Plaintiff has not sufficiently alleged the requisite pattern-of-racketeering-activity element.

[11] Plaintiff does not dispute its allegations do not support a claim of closed-ended continuity. (*See* Resp. 16). The Court thus assesses whether Plaintiff has adequately alleged open-ended continuity as required to state a RICO claim.

Defendants contend Plaintiff's allegations "foreclose any possibility [] Plaintiff can satisfy the continuity requirement." (Mot. 22 (alteration added)). In Defendants' view, Plaintiff has not adequately alleged a pattern of racketeering activity presenting a continued threat of criminal conduct. (*See id.* 20–27). To this, Plaintiff asserts "Defendants' misappropriation and utilization of Plaintiff's trade secrets is ongoing." (Resp. 15). Plaintiff insists Defendants' possession of trade secrets "constitutes open-ended continuity[]" because "it constitutes an ongoing threat of future criminal activity." (*Id.* 16 (alteration added)). The Court agrees with Defendants.

Plaintiff attempts to create open-ended continuity by alleging it "has continued to receive reports from clients . . . Perez, Intermodal, and Pro Cold are contacting Plaintiff's clients in an attempt to undercut Plaintiff's pricing and business relationships using the trade secrets stolen from Plaintiff by [] Perez." (Compl. ¶ 37 (alterations added); *see also* Resp. 15 (citing Compl. ¶ 37)). Stated differently, Plaintiff states it will continue to suffer economic harm as a result of Perez's *past* conduct. Plaintiff's single, general allegation[12] is insufficient to sustain a RICO claim against Defendants. Plaintiff offers no factual allegations establishing a distinct threat of ongoing or future racketeering activity by Defendants, nor does Plaintiff allege Defendants' conduct is part of the entities' regular way of doing business. *See H.J. Inc.*, 492 U.S. at 241–42. The open-ended inquiry requires more than simply alleging unsupported suspicions Plaintiff will suffer future economic harm as a result of Defendants' past conduct.

Plaintiff insists "Defendants' possession of Plaintiff's [t]rade [s]ecrets, both in digital and paper format, constitutes open-ended continuity, . . . as it constitutes an ongoing threat of future

---

[12] Plaintiff also alleges — in a conclusory manner — "Defendants willfully and with actual knowledge committed multiple acts including, but not limited to the unlawful theft and continuing misappropriation of Plaintiff's trade secrets[]" (Compl. ¶ 170 (alteration added)); and Defendants' "acts constitute a pattern of racketeering activity" (*id.* ¶ 171). The vague, unspecified threat of Defendants' conduct continuing in the future is insufficient to satisfy the continuity element required to establish a pattern of racketeering activity.

criminal activity." (Resp. 16 (alterations added)).  In other words, Plaintiff contends Defendants' ongoing use of stolen trade secrets, by itself, satisfies the open-ended continuity requirement. (*See id.* 16–18).  This is problematic for two reasons.

First, Plaintiff's argument is simply a restatement of its vague, conclusory allegation that Defendants' utilization of trade secrets is "ongoing." (*Id.*; *see also* Compl. ¶¶ 37, 165).  Second, Plaintiff's briefing does not adequately address whether Defendants' "ongoing" use of stolen trade secrets, standing alone, is sufficient to establish an open-ended scheme.[13] (Resp. 16–18); *see also Attia v. Google LLC*, No. 17-cv-06037, 2018 WL 2971049, at *18 n.15 (N.D. Cal. June 13, 2018) (explaining the plaintiffs' theory that "ongoing use" of trade secrets constitutes two predicate acts under RICO was "entirely unsupported and illogical." (quotation marks omitted)); *Nw. Osteoscreening, Inc. v. Mountain View Hosp., LLC*, No. 4:13-cv-00414, 2014 WL 4955673, at *6 (D. Idaho Oct. 2, 2014) (finding the plaintiffs failed to plead a pattern of racketeering activity because "the theft or fraud ceases once the trade secret is obtained."); *Brake Parts, Inc. v. Lewis*, No. Civ. A. 09-132, 2010 WL 3470198, at *8 (E.D. Ky. Aug. 31, 2010) (concluding the plaintiff failed to satisfy the continuity requirement because once the defendants stole the plaintiff's trade secrets, the scheme ended); *Binary Semantics Ltd. v. Minitab, Inc.*, No. 4:07-cv-1750, 2008 WL 763575, at *4 (M.D. Pa. Mar. 20, 2008) ("[T]he theft of trade secrets necessarily implies that they will be used.  Therefore, under [the] plaintiff's theory, every misappropriation of trade secrets

---

[13] Plaintiff claims Defendants' acts of "copying, downloading, uploading, sending, communicating, conveying, and possessing a trade secret" provides "much more fertile ground for a finding of open-ended continuity." (Resp. 17).  For this proposition, Plaintiff provides a parenthetical citation to *United States v. Suibin Zhang*, No. Cr-05-00812, 2012 WL 1932843 (N.D. Cal. May 29, 2012).  The Court is unpersuaded by Plaintiff's invocation of *Suibin Zhang*.  There, the criminal defendant was found guilty of stealing, copying, and transmitting his employer's trade secrets. *See id.* at *3–5.  It is unclear what relevance *Suibin Zhang* has on the present issue before the Court — whether Plaintiff has adequately pleaded continuity by vaguely alleging "ongoing use" of trade secrets.

could result in a RICO claim.  This would surely expand the scope of the statute beyond what it was intended to reach."  (alterations added)).

In short, Plaintiff's lone, general allegation is insufficient to meet the open-ended continuity requirement necessary to sustain a RICO violation.  *See Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) ("An open-ended continuity cannot be shown by conclusory allegations that once begun, the alleged misconduct threatens to continue into the future." (citation omitted)); *Viridis Corp.*, 155 F. Supp. 3d at 1364 (finding the plaintiffs' conclusory allegations that the defendants committed predicate acts as a regular way of doing business were insufficient to allege open-ended continuity); *Doria v. Class Action Servs., LLC*, No. 08-80512-cv, 2009 WL 10699955, at *5 (S.D. Fla. Mar. 4, 2009) (explaining general, conclusory allegations are insufficient to meet either the closed- or open-ended continuity requirement).

Count XI is thus dismissed.  If Plaintiff has a good-faith basis to amend Count XI, it may do so.

## IV.     CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, Pro Intermodal L.L.C., Pro Cold Storage, Inc., Victor Veliz, and Gustavo Perez's Joint Motion to Dismiss Plaintiff's Complaint and Memorandum of Law **[ECF No. 41]** is **GRANTED in part** and **DENIED in part** as follows:

1. The Motion is **GRANTED** as to Counts IV, VII, and XI.

2. The Motion is **DENIED** as to Count VIII.

**3.** Plaintiff is granted leave to amend its Complaint, in accordance with this Order, by **July 24, 2020**.  Given the deadline to amend pleadings has passed (*see* Order Setting

CASE NO. 20-20966-CIV-ALTONAGA/Goodman

Trial [ECF No. 36] 1), the July 24, 2020 deadline will not be extended, nor will Defendants be given extra time to file their combined response or separate answers to an amended pleading.

**DONE AND ORDERED** in Miami, Florida, this 15th day of July, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record