UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20966-CIV-ALTONAGA/Goodman

FLORIDA BEAUTY FLORA INC.,

    Plaintiff,

v.

PRO INTERMODAL L.L.C., *et al*.,

    Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, Pro Intermodal L.L.C., Pro Cold

Storage, Inc., Victor Veliz, and Gustavo Perez's[1] Renewed and Supplemented Motion for

Summary Judgment [ECF No. 104], filed on April 13, 2021. Plaintiff, Florida Beauty Flora Inc.,

filed a Response in Opposition [ECF No. 108]; to which Defendants filed a Reply [ECF No. 111].

The Court has carefully considered the Complaint [ECF No. 1], the parties' written submissions,[2]

the record, and applicable law. For the following reasons, the Motion is granted in part and denied

in part.

**I.      BACKGROUND**

    This case involves a dispute between an employer and its former employee who left to join

---

[1] Defendants are Pro Intermodal L.L.C. ("Intermodal"); Pro Cold Storage, Inc. ("Pro Cold"); Victor Veliz ("Veliz"; collectively, the "Intermodal Defendants"); and Gustavo Perez ("Perez"; together with the Intermodal Defendants, "Defendants").

[2] The parties' factual submissions include: Defendants' Supplemented Statement of Undisputed Material Facts in Support of their Renewed and Supplemented Motion for Summary Judgment ("Defs.' SOF") [ECF No. 105] with supporting exhibits (*see* [ECF Nos. 104-1, 105-1–105-10, 110-1]); Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Resp. SOF") (*see* [ECF No. 109] 1–10), and Plaintiff's Additional Material Facts ("Pl.'s SOF") (*see id.* 10–12) with supporting exhibits (*see* [ECF Nos. 109-1–109-7]); and Defendants' Reply Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment ("Defs.' Reply SOF") [ECF No. 112].

a competitor.  (*See generally* Compl.).  Plaintiff is a Florida corporation with its principal place of business in Miami, Florida.  (*See id.* ¶ 3).  Intermodal is a Florida limited liability company with its principal place of business in Hialeah, Florida (*see id.* ¶ 4); Pro Cold is a Florida corporation with its principal place of business in Miami, Florida (*see id.* ¶ 5).  Perez and Veliz are residents of Miami-Dade County, Florida.  (*See id.* ¶¶ 6–7).

***The facts***.  Plaintiff is a refrigerated carrier providing transportation, warehouse, and logistical services to clients in the floral and perishable industries throughout the United States. (*See id.* ¶¶ 14–15).  Plaintiff employed Perez for 11 years as a valued member of its management staff.  (*See id.* ¶¶ 23–24; Defs.' SOF ¶ 8; Pl.'s Resp. SOF ¶ 8).

*Defendants' version of the facts*.[3]  Perez oversaw Plaintiff's sales and customer service. (*See* Defs.' SOF ¶ 8).  Perez regularly worked from home when he was not working at Plaintiff's office.  (*See id.* ¶¶ 10–11; Pl.'s Resp. SOF ¶¶ 10–11).  He took calls outside of working hours to address customer concerns and issues.  (*See* Defs.' SOF ¶¶ 11–12).  Perez routinely forwarded company emails to his personal Gmail account to facilitate his work with customers and to create Google spreadsheets for Plaintiff.  (*See id.* ¶¶ 18–19).  Perez did not develop any knowledge, secrets, techniques, tactics, or skills while employed with Plaintiff; nor did he forward any proprietary company information, trade secrets, or confidential information for non-legitimate business purposes.  (*Compare id.* ¶¶ 7, 9, 23–24, *with* Pl.'s Resp. SOF ¶¶ 7, 9, 23–24 (disputing these facts)).

Perez resigned from his position in mid-February and joined Pro Cold, a decision he made post-resignation.  (*See* Defs.' SOF ¶ 15; Defs.' Reply SOF ¶ 57).  Plaintiff notified its customers

---

[3] Plaintiff (unnecessarily) disputes the most basic of background facts, but such disputes often concern immaterial facts or citations.  (*Compare* Defs.' SOF ¶ 1, *with* Pl.'s Resp. SOF ¶ 1 (disputing Defendants' citation to deposition testimony regarding the role of Plaintiff's founder, Ralph Milman)).  It is inefficient for the Court to address each of Plaintiff's disputes.

by letter that Perez resigned from his position. (*See* Defs.' SOF ¶ 16). When the customers responded to Plaintiff's correspondence, Plaintiff provided each customer with Perez's personal email and phone number. (*See id.*). Perez inputted these customers' contact information into his personal cell phone once they called him. (*See id.* ¶ 17).

Following his resignation, Perez offered to continue working with Plaintiff and help with customer issues. (*See id.* ¶ 20). Perez forwarded company emails in order to assist Plaintiff's customers. (*See id.*). He states Yudmila Gonzalez, a former Plaintiff employee, reached out to him "for []his help with [Plaintiff's] customers" because Ms. Gonzalez "became frustrated, exhausted, and stressed" following Perez's departure. (*Id.* ¶ 22 (alterations added)). At this time, Perez neither forwarded proprietary company information and trade secrets for non-legitimate purposes nor provided third parties with confidential information. (*Compare id.* ¶¶ 23–24, *with* Pl.'s Resp. SOF ¶¶ 23–24 (disputing these facts)).

Plaintiff's chief financial officer, Ronen Koubi, "belie[ves]" Perez "took a price list with him when he left his office" for the last time on February 14, 2020. (Defs.' SOF ¶¶ 2, 25 (alteration added); *see also* Defs.' Reply SOF ¶ 57). Mr. Koubi saw the price list prior to Perez's departure but was unable to locate it following Perez's resignation. (*See* Defs.' SOF ¶ 25). No inventory, however, was taken of the documents (or confidential information) in Perez's office; nor did anyone observe Perez leave Plaintiff's premises with any documents or call Perez to ask if he did. (*See id.* ¶¶ 27, 30). The alleged stolen price sheet contained prices for only floral clients. (*See id.* ¶ 29).

Plaintiff uses Google Drive, a cloud-based system, to maintain and share its corporate documents. (*See id.* ¶ 21). Plaintiff's printers do not include a confidentiality stamp or designation when company documents are printed by employees. (*See id.* ¶ 32). Shippers and farms can access

Plaintiff's customer data from its servers, including the customer names, the dates of service, and the numbers of boxes being shipped.  (*See id.* ¶ 33).  Plaintiff's prices are calculated by using base rates and a formula of charges that is added to the base rates.  (*See id.* ¶ 34).  Plaintiff considers these two components proprietary; yet, Plaintiff's customers and truck drivers are aware of base rates, additional charges, and trip sheets and manifests.  (*See id.* ¶¶ 34, 38).  Plaintiff's truck drivers are not required to execute confidentiality agreements.  (*See id.* ¶ 35).

Perez did not initiate contact with any of Plaintiff's customers — and specifically, Buds and Bloom and Derita.  (*See id.* ¶¶ 39–40, 43).  Quite the contrary; Buds and Bloom and Derita contacted Perez and requested price quotes after learning of his resignation from Plaintiff.  (*See id.* ¶ 40).  Plaintiff is uncertain whether customers shared its pricing information with Intermodal.  (*See id.* ¶¶ 41–42).  Perez did not share confidential information with the Intermodal Defendants; nor did the Intermodal Defendants encourage Perez to either forward emails to himself or share confidential information.  (*See id.* ¶¶ 43–47).

*Plaintiff's version of the facts*.  Perez's employment was governed by a Mutual Nondisclosure Agreement.  (*See* Pl.'s SOF ¶ 52; *id.*, Ex. 2, Mutual Nondisclosure Agreement ("Agreement") [ECF No. 109-2]; Defs.' Reply SOF ¶ 52).  The Agreement included definitions for "Confidential Information" and "Trade Secrets."  (Pl.'s SOF ¶ 53 (quotation marks omitted); *see also* Agreement 1[4]).  The Agreement authorized Perez to "only use [] Confidential Information or Trade Secrets in connection with the [] business relationship" with Plaintiff.  (Agreement 2 (alterations added); *see also* Pl.'s SOF ¶ 54).  The Agreement granted Perez "[a]ccess to Confidential Information and Trade Secrets . . . on a need-to-know basis."  (Agreement 2

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.  Citations to deposition testimony and hearing transcripts rely on the pagination and line numbering in the original document.

(alterations added); *see also* Pl.'s SOF ¶ 55; Defs.' Reply SOF ¶ 55). Plaintiff distributed to Perez an employee manual containing detailed policies on data security, computer usage, and securing the company's confidential information. (*See* Compl. ¶ 26; Pl.'s Resp. SOF ¶¶ 13–14).[5]

Perez resigned from his position in mid-February to join Pro Cold. (*See* Pl.'s SOF ¶¶ 56, 61–64; Pl.'s Resp. SOF ¶ 15). In February 2020, Perez, with assistance from former Plaintiff employee, Ms. Gonzalez, "forwarded himself a host of documents including a contract with a large customer, a list of shippers, email addresses, cellular numbers, and trip sheets." (Pl.'s SOF ¶ 58; *see also* Pl.'s Resp. SOF ¶ 22). Perez forwarded these documents into Intermodal and Pro Cold's email system. (*See* Pl.'s SOF ¶ 66). Perez and Veliz (1) personally accessed Plaintiff's confidential information; (2) discussed details contained within Plaintiff's Electronic Data Interchange;[6] and (3) utilized this information to convince one of Plaintiff's clients to switch to Pro Cold or Intermodal. (*See id.* ¶¶ 68–69).

***Plaintiff's Complaint***. On March 3, 2020, Plaintiff filed its Complaint against Defendants, asserting eleven claims for relief: injunctive relief against Perez (Count I); injunctive relief against the Intermodal Defendants (Count II); violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. section 1836 *et seq.*, against Defendants (Count III); violations of the Computer Fraud and Abuse Act, 18 U.S.C. section 1030 *et seq.*, against Defendants (Count IV); violations of the Economic Espionage Act, 18 U.S.C. section 1832 *et seq.*, against Defendants (Count V); violations of the Florida Uniform Trade Secrets Act ("FUTSA"), section 688.02, Florida Statutes, against

---

[5] Perez testified he "[n]ever" received an employee handbook. (May 1, 2020 Hr'g Tr. [ECF No. 58] 110:22–24 (alteration added)).

[6] Plaintiff's Electronic Data Interchange "contains details on [Plaintiff's] truck and loads, client information including names, contacts, and locations, client volume, and other information generally kept confidential by [Plaintiff]." (Decl. Samuel Acosta [ECF No. 109-3] ¶ 14 (alterations added)).

Defendants (Count VI); tortious interference with an advantageous business relationship against Intermodal and Pro Cold (Count VII); civil conspiracy against Defendants (Count VIII); breach of fiduciary duty against Perez (Count IX); aiding and abetting breaches of fiduciary duty against the Intermodal Defendants (Count X); and violations of the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. section 1962 *et seq.,* against Defendants (Count XI).  (*See generally* Compl.).

Defendants moved to dismiss Counts IV, VII, VIII, and XI for failure to satisfy Federal Rules of Civil Procedure 8(a) and 9(b) and for failure to state claims for relief under Federal Rule of Civil Procedure 12(b)(6).  (*See generally* J. Mot. to Dismiss Compl. [ECF No. 41]).  On July 15, 2020, the Court dismissed Counts IV, VII, and XI but granted leave to amend.  *See generally Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-20966-Civ, 2020 WL 4003494 (S.D. Fla. July 15, 2020).  Plaintiff then filed a Notice of Intent to Proceed with Litigation [ECF No. 52], advising that it was pursuing only the remaining counts in the Complaint.  (*See generally id.*).

***Defendants' Motion***.  Defendants now move for summary judgment on all remaining counts of Plaintiff's Complaint.[7]  (*See generally* Mot.; Reply).

## II.  STANDARD

Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a

---

[7] Plaintiff concedes summary judgment is appropriate for its claim under the Economic Espionage Act (Count V).  (*See* Resp. 12).

reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (citing Fed. R. Civ. P. 56(c)(1); alteration added; quotation marks omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (alteration added; citations omitted).

## III.    ANALYSIS

*Counts III and VI – the DTSA and the FUTSA.* Plaintiff brings parallel claims under the DTSA and Florida's trade-secret statute, the FUTSA.[8] (*See* Compl. ¶¶ 87–98, 119–28). The

---

[8] Because Plaintiff's trade secret misappropriation claims under the DTSA and the FUTSA are essentially the same, the Court addresses the claims together. *See, e.g., Hurry Fam. Revocable Tr. v. Frankel*, No.

DTSA provides a federal cause of action to "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1) (alterations added).  To establish a violation of the DTSA, a plaintiff must show (1) it owns a valid trade secret; (2) the trade secret relates to a product or service used in, or intended for use in, interstate commerce; and (3) a defendant misappropriated that trade secret.  *See IT Works Mktg., Inc. v. Melaleuca, Inc.*, No. 8:20-cv-1743, 2021 WL 1650266, at *7 (M.D. Fla. Apr. 27, 2021) (citation omitted).

The DTSA defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]"  18 U.S.C. § 1839(3) (alteration added; quotation marks omitted).  Information will not be considered a trade secret unless: (1) "the owner [] has taken reasonable measures to keep such information secret;" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]"  *Id.* (alterations added).

A misappropriation occurs when: "(1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's

---

8:18-cv-2869, 2019 WL 6311115, at *13 (M.D. Fla. Nov. 25, 2019) ("Plaintiffs' claims under the [DTSA and the FUTSA] require very similar showings, namely, the existence of a trade secret and the defendant's misappropriation of that trade secret." (alteration added)).

consent." *Frankel*, 2019 WL 6311115, at \*13 (quotation marks and citation omitted).  Put another way, "[t]he DTSA contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Robillard v. Opal Labs, Inc.*, 428 F. Supp. 3d 412, 451–52 (D. Or. 2019) (alteration added; quotation marks and citations omitted).

Similarly, the FUTSA provides civil remedies for the misappropriation of trade secrets. *See* Fla. Stat. §§ 688.001–009.  "To prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a trade secret and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) (quotation marks and citations omitted).

The FUTSA defines a "trade secret" as "information that: (a) derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020) (alterations adopted; quoting Fla. Stat. § 688.002(4)).  Misappropriation includes "'acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means' as well as use of that trade secret 'without express or implied consent by a person who [] used improper means to acquire knowledge of the trade secret; or knew or had reason to know that her or his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.'" *Scanz Techs., Inc. v. JewMon Enters., LLC*, No. 20-22957-Civ, 2021 WL 65466, at \*7 (S.D. Fla. Jan. 7, 2021) (alteration added; other alterations adopted; quoting Fla. Stat. 688.002(2)); *see also Compulife Software Inc.*, 959 F.3d at 1311 ("One party can

misappropriate another's trade secret by either acquisition, disclosure, or use." (citing Fla. Stat. § 688.002(2))).

Defendants contend there is no genuine dispute of material fact over whether any of Plaintiff's alleged trade secrets qualifies as a "trade secret" under the above definitions. (Mot. 4–6, 14). According to Defendants, it is undisputed Plaintiff's trade secrets — particularly, trip sheets, price lists, business documents, and customer manifests — are (or, at the very least, include) public information that is not unique to Plaintiff's business. (*See id.*; *see also* Reply 6–7). Defendants insist there is nothing that separates Plaintiff's purported trade secrets from matters generally known in the industry. (*See* Mot. 4–6, 14; Reply 6–7). Defendants conclude Plaintiff cannot establish the first element — the existence of a trade secret — of its claims for misappropriation of trade secrets under the DTSA or the FUTSA. (*See* Mot. 4–6, 14).

The alleged trade secrets are a compilation of Plaintiff's "customer list, pricing information and formulas, surcharge rate calculation, sales forecasting data, customer restrictions and requirements information, customer ordering databases and history, [and] future business expansion plans." (Compl. ¶ 40 (alteration added)). Plaintiff, through its corporate representative, Mr. Koubi, testified Perez "st[ole] . . . [r]ates, customers' contacts, sales information, routes information, lanes information, orders of stops, capacity, [and] contracts with . . . key customer[s]." (Apr. 5, 2021 Koubi Dep. [ECF No. 105-5] 72:5–9, 84:18–22, 86:2–5 (alterations added); *see also* Oct. 20, 2020 Koubi Dep. [ECF No. 105-4] 81:1–9; Acosta Decl. ¶¶ 11–12, 15, 17).[9] Mr. Koubi

---

[9] Defendants contend Acosta's Declaration fails to comply with Federal Rule of Civil Procedure 56(c)(4). (*See* Reply 2–3); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The Court finds *certain* portions of Acosta's Declaration are grounded in personal knowledge and thus is satisfied the Declaration does not run afoul of Rule 56(c)(4). Defendants' objection to the *entire* Acosta Declaration on personal-knowledge grounds is overruled. (*See, e.g.*, Acosta Decl. ¶ 11 ("While working

referred to Plaintiff's price and lane (or optimal route) information as the company's blueprint to success and described this information as a unique, confidential asset developed over "years and years and years of trials and error[s]."  (Oct. 20, 2020 Koubi Dep. 79:10–20 (alteration added); *see also* Apr. 5, 2021 Koubi Dep. 73:3–13, 74:13–15, 20–24, 78:13–16, 81:10–82:1).  Mr. Koubi explained Plaintiff's complex logistical information is valuable because it could allow competitors to strategically and (according to Plaintiff, illegally) undercut Plaintiff's prices and success in the industry.  (*See* Oct. 20, 2020 Koubi Dep. 81:5–6, 82:7–84:3; Apr. 5, 2021 Koubi Dep. 75:5–21).  Mr. Koubi emphasized the information and processes Perez allegedly stole were Plaintiff's trade secrets.  (*See* Apr. 5, 2021 Koubi Dep. 59:2–9, 73:3–13, 101:9–21, 103:19–22; Oct. 20, 2020 Koubi Dep. 26:20–30:4).

Plaintiff produces enough evidence the information and processes it provided Perez access to constitute trade secrets.  The Court will not — as Defendants invite it to do — determine as a matter of law that Plaintiff's information and processes are not trade secrets.  Indeed, that issue is for the trier of fact to resolve.  *See, e.g.*, *Compulife Software Inc.*, 959 F.3d at 1311 ("Whether something is a trade secret is a question typically resolved by a fact finder after full presentation of evidence from each side." (alteration adopted; quotation marks and citations omitted)); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) (noting courts are extremely hesitant to grant summary judgment regarding the fact-intensive question of the existence of a trade secret).

---

with Pro Cold, I *overheard* daily conversations between Perez, Veliz, and others regarding [Plaintiff], its customers and its pricing for customers." (alteration and emphasis added)); *id.* ¶ 15 ("On more than one occasion, I *saw* Perez, Veliz, and others accessing and looking at [Plaintiff's] [Electronic Data Interchange] from inside Pro Cold's office." (alterations and emphasis added)); *id.* ¶ 17 ("On numerous occasions, I *overheard* Perez, Veliz, and others discussing the details contained within [Plaintiff's] [Electronic Data Interchange], and how to utilize that information to convince the client to switch to Pro Cold or [] Intermodal." (alterations and emphasis added))).

Defendants next contend Plaintiff failed to take reasonable measures to protect its trade secrets. (*See* Mot. 6–9, 14–15). For a trade secret to exist, the owner must take "reasonable measures to keep such information secret[.]" 18 U.S.C. § 1839(3) (alteration added); *see also* Fla. Stat. § 688.002(4).

Plaintiff cites three measures it takes to maintain secrecy of the company's confidential information — specifically, password protection on software storing its confidential information, execution of non-disclosure agreements, and employee manuals as to the use and non-disclosure of proprietary information. (*See* Yudmila Gonzalez Dep. [ECF No. 105-10] 82:25–84:6; Agreement 1–2; Oct. 20, 2020 Koubi Dep. 12:4–13:24; Compl. ¶ 26; Pl.'s Resp. SOF ¶¶ 13–14). Defendants do not dispute Plaintiff identifies measures it takes to preserve the secrecy of its trade secrets but cite evidence purportedly showing Plaintiff's confidential information is readily ascertainable in the public domain. (*See* Mot. 6–9, 14–15). Like the issue of trade secrets, "the Court is not persuaded that summary judgment is the most appropriate — or, for that matter, the most effective — mechanism for adjudicating the fact-intensive question[] of . . . whether [] [P]laintiff took reasonable steps to protect its trade secrets." *Matrix Health Grp. v. Sowersby*, No. 18-61310-Civ, 2019 WL 4929917, at *6 (S.D. Fla. Oct. 7, 2019) (alterations added; quotation marks and citation omitted).

Defendants further argue Plaintiff cannot show trade secret misappropriation: particularly, that "Perez disclosed and Defendants used confidential information acquired from [Plaintiff]." (Mot. 10 (alteration added; emphasis omitted); *see also id.* 15). The Court disagrees in part and concludes questions of fact preclude summary judgment on the issue as to Perez, Pro Cold, and Intermodal.

Plaintiff points out Perez took, forwarded, or received confidential information when he left his employment with Plaintiff to work for Intermodal and Pro Cold.  (See Apr. 5, 2021 Koubi Dep. 72:5–9, 84:18–22, 86:2–5; Oct. 20, 2020 Koubi Dep. 81:1–4; Gonzalez Dep. 79:9–81:4; Acosta Decl. ¶ 15; Decl. Rec. Custodian [ECF No. 109-5] 4).  It emphasizes that the timing of Perez's arrival at Intermodal and Pro Cold raises significant questions.  (See Pl.'s SOF ¶¶ 59–64; Defs.' Reply SOF ¶¶ 59–64).  Plaintiff further highlights Samuel Acosta's Declaration, in which Acosta states he was a former independent contractor with Pro Cold and that he "saw" and "overheard" on "numerous occasions[,]" Defendants discussing "how to utilize [Plaintiff's Electronic Data Interchange] to convince [a] client to switch to Pro Cold or [] Intermodal."  (Acosta Decl. ¶¶ 3, 15, 17 (alterations added); see also Apr. 5, 2021 Koubi Dep. 61:14–63:16 (testifying that Perez "constantly . . . solicit[s] [Plaintiff's] customers, using the information that he took from [Plaintiff] wrongfully." (alterations added))).  Fact issues clearly remain as to whether Perez, Pro Cold, and Intermodal disclosed or used the alleged trade secrets.[10]

---

[10] Defendants insist "there is no evidence to support [] Veliz'[s] individual liability."  (Mot. 20–22 (alterations added; bold and capitalization omitted)).  The Court agrees with respect to Plaintiff's DTSA and FUTSA claims.

   Plaintiff, in a perfunctory manner, states the evidence — although citing to no evidence — supports Veliz's individual liability.  (See Resp. 17; Reply 9 (aptly observing: "Other than a conclusory assertion that Veliz committed tortious acts as an individual, [Plaintiff] identifies no evidence that he acted other than in his corporate capacity." (alteration added))).  It is worth repeating: Plaintiff cites no evidence showing Veliz, individually and not as President or managing member of Pro Cold or Intermodal (see Compl. ¶¶ 19–20), misappropriated Plaintiff's trade secrets under any of the theories set forth in the DTSA or the FUTSA, or engaged in any fraud, intentional act, or any other conduct that would rise to a level justifying the imposition of personal liability on him.  See 18 U.S.C. § 1839(5); Fla. Stat. § 688.002(2); (see also Pl.'s Resp. SOF ¶ 47 (emphasizing the fact Veliz "at least[] discussed" Plaintiff's pricing with Perez but not acquiring, disclosing, or using any trade secrets (alteration and emphasis added)); Resp. 11 (stating Veliz accessed Plaintiff's Electronic Data Interchange but in doing so, solely relies on Acosta's Declaration that states he is unaware if such access was improperly obtained (citing Acosta Decl. ¶ 15))).  The Court will not sift through the record to find evidence supporting Plaintiff's claims against Veliz.  See Case v. Eslinger, 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they [sic] chose not to develop for the district court at the time of the summary judgment motions." (quotation marks and citation omitted)).

In short, Plaintiff raises triable issues of fact on its DTSA and FUTSA claims as to Defendants, Perez, Pro Cold, and Intermodal.[11, 12]

***Counts VIII, IX, and X – civil conspiracy, breach of fiduciary duty, and aiding and abetting breaches of fiduciary duty claims***.  Defendants argue Plaintiff's claims in Counts VIII, IX, and X are preempted by the FUTSA.  (*See* Mot. 15–17).  The "FUTSA preempts certain 'conflicting tort, restitutory, and other laws of this state providing civil remedies for misappropriation of a trade secret.'"  *Scanz Techs., Inc.*, 2021 WL 65466, at *8 (quoting Fla. Stat. § 688.008(1)).   The law does not affect "[o]ther civil remedies that are not based upon misappropriation of a trade secret[.]"  Fla. Stat. § 688.008(2) (alterations added).

---

[11] Defendants contend Plaintiff is not entitled to punitive damages *under Florida law*.  (*See* Mot. 18–19). In rebuttal, Plaintiff insists it demonstrates entitlement to punitive damages *under Florida law*.  (*See* Resp. 16–17).  This issue is relatively straightforward.  Because Plaintiff does not allege entitlement to or demand punitive damages under Florida law in the Complaint — but rather only reserves a right to do so — Defendants' request for summary judgment on punitive damages is unnecessary and thus denied.  (*See* Compl. 29 ("Plaintiff further reserves all right to seek punitive damages[.]" (alteration added))); *cf. Sura v. Portfolio Recovery Assocs., LLC*, No. 2:17-cv-676, 2018 WL 6983500, at *6 (M.D. Fla. Nov. 26, 2018), *report and recommendation adopted*, 2018 WL 6983482 (M.D. Fla. Dec. 12, 2018) (finding an affirmative defense directed toward the plaintiff's reservation of right to include punitive damages "immaterial" because no demand for punitive damages had been pleaded or demanded).

 The Court notes Plaintiff seeks punitive damages against Defendants under the DTSA.  (*See* Compl. 17). The DTSA permits recovery of "exemplary damages in an amount not more than 2 times the amount of [compensatory] damages awarded under subparagraph (B)" and "if the trade secret is willfully and maliciously misappropriated[.]"  18 U.S.C. § 1836(b)(3)(C) (alterations added).  Neither party addresses this language of the DTSA.  (*See generally* Mot.; Resp.).  Either way, the issues of fact discussed above "encompass whether Defendants engaged in willful and malicious misappropriation and fall within the province of the jury."  *Nephron Pharms. Corp. v. Hulsey*, No. 6:18-cv-1573, 2020 WL 7137992, at *2 (M.D. Fla. Dec. 7, 2020) (quotation marks omitted; citing 18 U.S.C. §§ 1836(b)(3)(C), (D); other citations omitted).  For this same reason, the Court will not determine whether Plaintiff is entitled to attorney's fees and costs at this stage.  (*See* Mot. 19–20); *see also Nephron Pharms. Corp.*, 2020 WL 7137992, at *2 (citing Fla. Stat. § 688.005; other citations omitted); Fla. Stat. § 688.005 ("If . . . willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." (alteration added)).

[12] Defendants maintain Plaintiff is not entitled to actual damages, doing so by selectively quoting Mr. Koubi's deposition and citing an out-of-circuit district court rule statement.  (*See* Mot. 17–18 (citing *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 495 F. Supp. 3d 687, 708 (N.D. Ill. 2020))).  Simply put, the Court is not persuaded.  (*See* Resp. 15–16).

To start, Defendants raise the FUTSA preemption defense for the first time on summary judgment. (*Compare* Def., Perez's Answer and Affirmative Defenses to Compl. [ECF No. 54] 3–5, Def., Veliz's Answer and Affirmative Defenses to Compl. [ECF No. 55] 9–10, Def., Intermodal's Answer and Affirmative Defenses to Compl. [ECF No. 56] 9–10, *and* Def., Pro Cold's Answer and Affirmative Defenses to Compl. [ECF No. 57] 9–10, *with* Defs.' Mot. Summ. J. [ECF No. 83] 14–16, *and* Mot. 15–17).

"Preemption is an affirmative defense that usually must be raised in an answer or other responsive pleading and, if not so raised, the defense is considered waived." *Small v. Amgen, Inc.*, No. cv 2:12-476, 2016 WL 4942078, at *2 (M.D. Fla. Jan. 25, 2016) (citation omitted); *see also Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003) ("The pleading of an affirmative defense is mandated by Federal Rule Civil Procedure 8(c) to be presented in a responsive pleading, and a party waives its right to advance an affirmative defense by failing to assert it in such." (citation omitted)); *Kleiman v. Wright*, No. 18-cv-80176, 2020 WL 5632654, at *32 (S.D. Fla. Sept. 21, 2020) (noting FUTSA preemption is an affirmative defense). Affirmative defenses, however, are not waived if a plaintiff is not prejudiced where such a defense is raised for the first time at summary judgment. *See Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797–98 (11th Cir. 1989) (finding no error where the district court considered an affirmative defense first raised in a motion for summary judgment filed one month before trial); *see also Berman v. Kafka*, 661 F. App'x 621, 624–25 (11th Cir. 2016) ("Where a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with [Rule] 8(c) does not cause the plaintiff any prejudice, and the trial court commits no error by considering the affirmative defense on the merits." (alteration added; quotation marks and citation omitted)).

Plaintiff is not prejudiced by allowing Defendants to assert a preemption defense, as it has not only been on notice of the defense but also been given adequate time to respond. On March 8, 2021, Defendants put Plaintiff on notice of their intent to seek summary judgment on the unpled affirmative defense of preemption. (*See* Defs.' Mot. Summ. J. 14–16). Since that time, the Court denied Defendants' initial summary judgment motion, permitted Plaintiff to take additional discovery before responding to a dispositive motion, and allowed the parties to refile dispositive motions. (*See* Mar. 22, 2021 Order [ECF No. 90] 1; *see also* Dec. 22, 2020 Order [ECF No. 72] 2 (resetting trial during the Court's two-week trial calendar beginning on August 2, 2021)). Notably, Plaintiff does not claim to be unfairly surprised or prejudiced by Defendants raising the affirmative defense in their Motion. (*See generally* Resp.).

Given these circumstances, the Court will consider the preemption affirmative defense. *See, e.g.*, *Edwards v. Fulton Cnty., Ga.*, 509 F. App'x 882, 887–88 (11th Cir. 2013) (recognizing "a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff." (collecting cases)); *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1222 (11th Cir. 2012) (concluding the district court did not abuse its discretion when the defendant raised its defense in a summary judgment motion a month and a half before trial and the plaintiff had not suggested it suffered prejudice from the delay).

Next, the merits. "To determine whether allegations of trade-secret misappropriation preempt a plaintiff from sufficiently pleading a separate, but related tort, the Court must evaluate whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by [section] 688.008." *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018) (alteration added; quotation marks and citation omitted). "Thus, a plaintiff's separate tort claim is preempted by [the] FUTSA if there is no material

distinction between the plaintiff's FUTSA claim and the other allegation." *Id.* at 1294–95 (alteration added; quotation marks and citations omitted).  "In other words, the allegations must be separate and distinct." *ThinkLite LLC v. TLG Sols., LLC*, No. 16-24417-Civ, 2017 WL 5972888, at *4 (S.D. Fla. Jan. 31, 2017) (citation omitted).

The Court discerns no material distinction between the FUTSA claim and the claims asserted in Counts VIII (civil conspiracy), IX (breach of fiduciary duty), and X (aiding and abetting breaches of fiduciary duty).  Indeed, the underlying wrong in each of those claims is limited to trade secret misappropriation and each re-alleges all the prior allegations of the Complaint.[13] (*Compare* Compl. Count VI (FUTSA) ¶¶ 121–24 (alleging Defendants misappropriated trade secrets by transmitting them without authority to Perez's email account; removing confidential information; disclosing trade secrets to other Defendants; and acquiring those secrets through improper means), *with* Count VIII (civil conspiracy) ¶¶ 136–37, 139–42 (pleading Defendants forged an agreement to secure trade secrets; and took overt acts by removing trade secrets from Plaintiff's office, by accepting misappropriated trade secrets, and by utilizing trade secrets for business purposes), Count IX (breach of fiduciary duty) ¶¶ 144, 146 (stating Perez "knowingly and willfully breached his fiduciary duty to Plaintiff . . . by: (1) . . . conspir[ing] with [] Intermodal to acquire and misappropriate the trade secrets of Plaintiff; (2) transmitting Plaintiff's trade secrets to his personal e-mail account for his and his new employer's later use; [and] (3) removing documents containing company trade secrets and confidential company information" (alterations

---

[13] Plaintiff appears to agree.  In its words: "Plaintiff's common law claims are materially distinct from Plaintiff's FUTSA claim[] because *each alleges* that the Defendants, as applicable, *misappropriated Plaintiff's trade secrets* to promote their own interests." (Resp. 15 (alteration and emphasis added)).  Said differently, the misappropriation of trade secrets comprises the underlying wrong for each of Counts VIII, IX, and X.  Although Plaintiff suddenly backtracks in the subsequent sentence — confusingly explaining these "common law claims speak to [] why" Defendants misappropriated trade secrets (*id.* (alteration added; emphasis omitted)) — the Court is unconvinced by Plaintiff's attempt to draw material distinctions between Counts VIII, IX, and X and the allegations of the FUTSA violations.

added)), *and* Count X (aiding and abetting breaches of fiduciary duty) ¶¶ 148, 150–51 (alleging the Intermodal Defendants aided and participated in the following breaches of fiduciary duties: "(1) . . . conspir[ing] with [] [Perez] to acquire and misappropriate the trade secrets of Plaintiff; (2) transmitting Plaintiff's trade secrets to [Perez's] personal e-mail account for his and his new employer's later use; [and] (3) removing documents containing company trade secrets and confidential company information" (alterations added))).

In sum, Plaintiff fails to identify a material distinction between its FUTSA claim and the claims asserted in Counts VIII, IX, and X; thus, the Court finds those claims are preempted. Summary judgment will be entered in favor of Defendants on Counts VIII, IX, and X.

***Counts I and II – injunctive relief claims***.  Counts I and II are styled as claims for injunctive relief.  (*See* Compl. ¶¶ 64–86).

"The Eleventh Circuit has made clear that any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action.  There is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under [Rule] 12(b)(6) (failure to state a claim)."  *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1379 (S.D. Fla. 2019) (alteration added; other alteration adopted; quotation marks omitted; quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005)).  "An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed — if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise."  *Alabama*, 424 F.3d at 1127 (quotation marks and citation omitted).  Stated differently, "an injunction is not a cause of action but a remedy."  *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1288 (M.D.

CASE NO. 20-20966-CIV-ALTONAGA/Goodman

Fla. 2009) (alteration added; collecting cases); *see also Fed. Nat'l Mortg. Ass'n v. Monaco Landscape Maint. Ass'n, Inc.*, No. 2:16-cv-2980, 2017 WL 2683682, at *4 (D. Nev. June 20, 2017) (following "the well-settled rule in that a claim for 'injunctive relief' standing alone is not a cause of action" (collecting cases)).

Plaintiff's "claims" for injunctive relief are remedies and are not properly brought as independent, substantive claims. Consequently, Counts I and II are dismissed.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants, Pro Intermodal L.L.C., Pro Cold Storage, Inc., Victor Veliz, and Gustavo Perez's Renewed and Supplemented Motion for Summary Judgment **[ECF No. 104]** is **GRANTED in part** and **DENIED in part** as follows:

1. The Motion is **DENIED** with respect to **Counts III** and **VI** as to Defendants Perez, Intermodal, and Pro Cold.

2. Summary judgment in favor of Defendant Perez is **GRANTED** as to **Counts V**, **VIII**, and **IX**.

3. Summary judgment in favor of Defendants Intermodal and Pro Cold is **GRANTED** as to **Counts V**, **VIII**, and **X**.

4. Summary judgment in favor of Defendant Veliz is **GRANTED** as to **Counts III**, **VI**, **V**, **VIII**, and **X**.

5. **Counts I** and **II** of the Complaint are **DISMISSED without prejudice**.

**DONE AND ORDERED** in Miami, Florida, this 14th day of May, 2021.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

19